191 N.J. Super. 84 (1983)
465 A.2d 564
REDEB AMUSEMENT, INC., PLAINTIFF,
v.
MAYOR AND COMMITTEE OF THE TOWNSHIP OF HILLSIDE, A BODY CORPORATE IN POLITIC, AND THE CLERK OF THE TOWNSHIP OF HILLSIDE, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
February 16, 1983.
*90 Dennis J. Oury for plaintiff (Mariniello & Oury, attorneys) Dennis J. Oury on the brief.
Lawrence M. Miller for defendant (Miller & Menaker, attorneys) Lawrence M. Miller on the brief.

OPINION
FELLER, J.S.C. retired, temporarily assigned on recall.
This is an action in lieu of prerogative writs. On April 19, 1982 plaintiff applied to the Township Clerk for a license for 35 video games for a proposed video arcade in the Shop-Rite Mall Satellite Store Shopping Center. He tendered a check for $5250.00, the correct license fee for the machines pursuant to Chapter VII Sec. 7-14.1 through 7-14.6 of the Revised General Ordinances of the Township of Hillside.[*]
The application was denied because the building inspector had refused to issue a certificate of occupancy, claiming that video games were not permitted uses in the Highway Commercial (HC) zone. In addition, the investigation by the police department pursuant to § 7-1.3 revealed that the Hillside police had responded to that shopping center 246 times in the period from January 1981 through April 29, 1982. On the basis of this investigation, the chief of police had strongly recommended *91 against granting the application. Subsequently, in July 1982 the Township adopted an 18 month moratorium ordinance on future licenses for mechanical amusement devices.
Plaintiff contends that both this moratorium ordinance and the mechanical amusement devices ordinances § 7-14.1 through 6 are unconstitutional and void as applied to plaintiff's application as an improper and unlawful exercise of municipal police power.
The issues presented are:
I  Must plaintiff exhaust his administrative remedies?
II  Are video game machines permitted uses in HC zones?
III  Is the Hillside licensing ordinance valid?
IV  Is the increased license fee valid?
V  Is the licensing moratorium of 18 months duration valid?
VI  Is the plaintiff's application subject to the moratorium?

I

EXHAUSTION OF ADMINISTRATIVE REMEDIES
Defendant claims that plaintiff should be required to exhaust its administrative remedies. However, this court is of the opinion that a remand at this time would not be in the interests of justice since it would result in undue delay of the final disposition of this matter.
The doctrine of exhaustion of administrative remedies is set forth in R. 4:69-5 and is expressly subject to exception "where the interests of justice require otherwise." In Durgin v. Brown, 37 N.J. 189 (1962) our Supreme Court recognized that "The requirement for the exhaustion of the administrative remedy is neither jurisdictional nor absolute in its terms." Id. at 202-203. Rather the rule vests discretion in the trial court to determine whether the interests of justice require that the process of administrative appeal be bypassed, and no rigid formula can be prescribed for the exercise of that discretion. Id. at 203. See also Atlantic City v. Laezza, 80 N.J. 255, 265 *92 (1979); Garrow v. Elizabeth Gen. Hosp. & Disp., 79 N.J. 549, 561 (1979); Swede v. Clifton, 22 N.J. 303, 314-316 (1956).
Thus, in the interests of justice the court will dispense with the doctrine of exhaustion of administrative remedies in this case.

II

VIDEO GAME MACHINES IN HC ZONE
One of the reasons given for denying plaintiff's application was that the building inspector had "denied plaintiff a C.O.[**] for said premises as a video arcade, as a nonpermitted use." The shopping center is in an HC zone, § 22-6(i). The list of permitted uses does not include video games per se, but does include shopping centers. At trial Frank Volturo, the Hillside Construction Official and former building inspector, testified that the term "designed shopping centers" was not defined in the ordinance, but that in his opinion it consisted of "4 or 5 stores."
The subject shopping center contains a Burger King Restaurant even though restaurants are not permitted uses in the HC zone. Volturo testified that Hillside "traditionally" allowed restaurants of this type in the HC zone.
Bowling alleys and billiard rooms are also not in the ordinance list of HC permitted uses, but under their licensing ordinance, § 7-15.3, they are located in HC and Light Industrial zones. The licensing ordinance for "Mechanical Amusement Devices," § 7-14, does not include a location section. But the use is so similar to bowling alleys and billiard rooms that to discriminate between them would be arbitrary, unreasonable and capricious. "Classification [must] rest on real and not feigned differences." Katobimar Realty Co. v. Webster, 20 N.J. 114, 123 (1955). Arbitrary deviations from general classifications *93 are void as being constitutionally forbidden and against the basic rationale of zoning. Id.; Rock Hill v. Chesterfield Tp., 23 N.J. 117, 126 (1957); Roselle v. Wright, 37 N.J. Super. 507 (Law Div. 1955), aff'd, 21 N.J. 400 (1956).
Bowling alleys, pool tables, and video games are essentially the same. All are mechanical amusements. Many pool tables are coin-operated. All must be treated alike.
Therefore, it is the opinion of this court that the zoning ordinance must be read in conjunction with the permitted uses under the licensing ordinances. Mechanical amusement devices are, under a rational interpretation of the licensing ordinances, permitted uses in HC and the Light Industry zones.

III

VALIDITY OF LICENSING ORDINANCE CHAP. VII § 7-14.1 THROUGH 7-14.6
An ordinance is presumed to be constitutional and valid until declared otherwise by the court. Hasbrouck Hts. Hosp. Ass'n v. Hasbrouck Hts. Boro., 15 N.J. 447 (1954); Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957); Moyant v. Paramus Boro., 30 N.J. 528, 554 (1959). In fact there must be compelling evidence to overcome the presumption of validity that attaches to a municipal ordinance. Clifton v. Weber, 84 N.J. Super. 333, 339 (App.Div. 1964), aff'd, 44 N.J. 266 (1965).
For a licensing ordinance to be valid, it must set out specific standards and norms which control the designated officials in their determination of whether to grant licenses. Silco Auto. Vend. Co. v. Puma, 105 N.J. Super. 72 (Law Div. 1969) rev'd on other grounds 108 N.J. Super. 427 (App.Div. 1970); Gross v. Allan, 37 N.J. Super. 262 (App.Div. 1955); Raritan Tp. v. Hubb Mtrs., Inc., 26 N.J. Super. 409 (App.Div. 1953).
Where there are no standards or inadequate standards resulting in unbridled discretionary powers, licensing provisions *94 are void. Id. See also Weiner v. Stratford Boro., 15 N.J. 295, 299, 300 (1954). Such standards as "the approval of particular administrative or police officer," Gross v. Allan, supra, 37 N.J. Super. at 268, or "for sufficient cause appearing" are invalid. Lipkin v. Duffy, 119 N.J.L. 366 (E. & A. 1938).
However, in 1 Davis, Administrative Law Treatise (1958), sec. 2.15 at 150 as cited in Esso v. Holderman, 75 N.J. Super. 455, 474 (App.Div. 1962) aff'd o.b., 39 N.J. 355 (1963), it is stated:
The direction of movement of the law of delegation is clear. In the federal courts nothing but a congressional abdication or clear abuse is likely to be held an invalid delegation. One state court declared in 1956: "The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increase." Too many courts remain unaware of this "modern tendency."
In Ward v. Scott, 11 N.J. 117, 123-124 (1952) the court held that the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactment under the police power. Thus, the Board of Public Utility Commissioners has been guided by simple standards of "public convenience of necessity." R.S. 48:2-21. See Fornarotto v. Bd. of Public Util. Comm., 105 N.J.L. 28, 32 (Sup.Ct. 1928). The Commissioner of Alcoholic Beverage Control, with authority to fix prices and promulgate regulations, Gaine v. Burnett, 122 N.J.L. 39 (Sup.Ct. 1939), aff'd, 123 N.J.L. 317 (E. & A. 1939), has been guided by the general legislative pronouncement that the statute shall be administered in "such a manner as to promote temperance and eliminate the racketeer and bootlegger." N.J.S.A. 33:1-3, 39. And the Director of the Milk Control Board has been authorized to take measures including the fixing of prices and the promulgation of regulations as may be "necessary to control or prevent unfair, unjust, destructive and demoralizing practices which are likely to result in ... the demoralization of agricultural interests in this State engaged in the production of milk; . . as will best protect the supply of fresh, wholesome and sanitary milk in this State." State Bd. of Milk Control v. Newark Milk Co., 118 *95 N.J. Eq. 504, 508, 509 (E. & A. 1935); Como Farms, Inc. v. Foran, 6 N.J. Super. 306, 311 (App.Div. 1950). See also Veix v. Seneca B. & L. Ass'n, 126 N.J.L. 314, 323 (E. & A. 1941); Little Ferry Boro. v. Bergen Cty. Sewer Auth., 9 N.J. 536, 544 (1952).
Under § 7-14.2 all operators of commercial mechanical amusement devices must be licensed. The licensing procedure is set out in § 7-1.2 and 3. Two problems are immediately apparent.
First, it is evident that in the instant case the requirements of § 7-1.3 have not been followed by the municipality. The ordinance states in pertinent part:
7-1.3 Investigation of Applicants. Each application shall be referred to the police chief or a police officer designated by him, who shall immediately institute whatever investigation of the applicant's business responsibility, moral character and ability to properly conduct the licensed activity he considers necessary for the protection of the public. He shall communicate his findings in writing to the township clerk within a reasonable time after the application has been filed. If the investigator decides that the applicant's character, ability or business responsibility is unsatisfactory, or the products, services or activity are not free from fraud he shall disapprove the application and the clerk shall refuse to issue the license and so notify the applicant. Otherwise, the clerk shall issue the license immediately, provided the required license fees have been paid.
Thus, the specific objects of investigation are the business responsibility, moral character and ability to conduct the business of the applicant. The focus of the instant investigation and the stated reason for denying the license application concerned an investigation not of the applicant but of the proposed site of the video arcade, the shopping center. It was the high incidence of police calls to that area without the arcade in it, that resulted in the investigator's strong recommendation against the granting of the license, not the moral character, business responsibility or ability of plaintiff.
Thus, this action by the police department constituted an abuse of its power under the ordinance causing a denial of the application for faulty reasons.
Second, the issue arises whether § 7-1.3 has sufficient standards and guidelines for the designated investigator. The township *96 clerk has the power to grant or deny licenses, but he is controlled by the disapproval of the investigating officer if he finds the applicant "unsatisfactory".
Under § 7-1.2(f) the applicant must give "appropriate evidence as to the good character and business responsibility ... so that an investigator may properly evaluate his character and responsibility." Under § 7-1.2(e) the applicant must reveal any criminal convictions and ordinance violations other than traffic offenses.
In upholding a similar ordinance, our Supreme Court stated:
A standard will not be deemed inadequate simply because the discretion might be abused. Arbitrary action by the official will not be anticipated.... We believe the norm of "satisfactory" as to an applicant's "character and business responsibility" is minimally sufficient.... The police chief can, of course, reach his conclusion only on objective facts and not by mere whim. Moyant v. Paramus, 30 N.J. 528, 553-554 (1959).
Thus, this court holds that the licensing investigatory ordinance has sufficient standards and guidelines.
§§ 7-14.1 through 6 also contain sufficient standards for the conduct of mechanical amusement device establishments which are applicable to all who bring themselves within its terms. Plaintiff has challenged this ordinance as invalid for failure to provide a location where these devices are permitted. Based on this court's holding that these devices are permitted wherever bowling alleys and billiard rooms are permitted, this challenge is now moot.
However, even if this court is in error the lack of a location ordinance would be insufficient to cause a finding of unconstitutionality under the facts of this case. There is no absolute prohibition on places of entertainment, amusements, games or movies in Hillside. Supercade Cherry Hill, Inc. v. Eatontown, 178 N.J. Super. 152, 154 (App.Div. 1981). Nor is there an unconstitutional limitation on the allowable number of machines per location. America on Wheels v. Eatontown, 178 N.J. Super. 155, 156 (App.Div. 1981). In fact, Hillside has already licensed 70 mechanical amusement devices. Obviously, despite *97 the lack of a location ordinance within that particular licensing section, these machines have been permitted into commercial districts within the township.
Therefore, it is the opinion of this court that the Hillside Licensing Ordinance for Mechanical Amusement Devices is valid. However, the denial of plaintiff's application is reversed and remanded for a proper investigation under the ordinance.

IV

VALIDITY OF LICENSE FEE
Plaintiff challenges the validity of the license fee, § 7-14.4 as amended. The fee for video, coin-operated machines was raised to $150 per machine on January 1, 1982 almost four months prior to plaintiff's application.
It is well established principle of law that municipalities may regulate commercial coin-operated devices. Silco Auto. Vend. Co., supra. The power to regulate and license has a statutory basis. N.J.S.A. 40:52-1. In deciding whether the license fee is reasonable, the court considers several factors: necessary inspections, enforcement of police, fire, sanitary and zoning laws, and administrative processing costs. Some revenue may be derived by a municipality, so long as that purpose is not a primary factor in setting the fee. Colonial Oaks West v. E. Brunswick Tp., 61 N.J. 560 (1972); Monmouth Junction Mobile Home Pk, Inc. v. S. Brunswick Tp., 107 N.J. Super. 18 (App.Div. 1969) cert. den. 55 N.J. 30 (1969); Belleville Chamber of Commerce v. Belleville, 51 N.J. 153 (1968); Bellington v. E. Windsor Tp., 17 N.J. 558 (1955); Salomon v. Jersey City, 12 N.J. 379 (1953).
Township Clerk, C. Mildred Karlik, testified that the $150 fee barely covers the administrative costs. She testified to the number of municipal employee hours involved and the administrative costs. No revenue is raised and the additional costs of enforcing police, fire and sanitary codes are not recovered. A *98 review of this evidence leads this court to conclude that the increase in the license fee from $50 to $150 was justified and reasonable.
Plaintiff claims that this fee, when multiplied by 35 machines, is prohibitory and disproportionate to the amount of administrative work required. Additionally in the second and subsequent years there is no administrative processing procedure. Yet the fee is not reduced. Therefore, plaintiff argues that the fee is excessive and void.
These arguments raise novel questions of law in our State. However, the rationale on license fees remains the same. Plaintiff's arguments have merit. If a license applicant can prove that these license fees do not have a rational relationship to the approved costs involved in processing an application for multiple machines in the same location, then those fees are excessive and will not be upheld by the court. If, in subsequent years the license holder can prove that the total number of municipal employee hours spent in enforcing police, fire and sanitary codes, in inspecting the video game premises, or in administering the license are not rationally related to the aggregate license fees, then again, the fees will be held to be excessive and invalid. Of course, the court reiterates that municipalities may raise some revenue from their license fees so long as revenue is not the primary factor in setting the fees.
Ms. Karlik testified that the only increase in the amount of employee time caused by an application for multiple machines in the same location was the time required to write the necessary information in the township ledger book. Thus, the court now holds that an aggregate fee of $5250 is unreasonable, arbitrary and capricious in relation to the amount of municipal employee time required to process this application. In reaching this conclusion, this court has also considered the testimony of the Police Detective and the Construction Official as to their duties which arise as a result of the application.
*99 Although $150 dollars is a reasonable fee for one machine, a simple mathematical multiplication of that fee is unreasonable, arbitrary and capricious during the first year of the operation of the machines.
However, it is premature for this court to rule on the issue of subsequent years. The actual costs in enforcement and administration cannot be projected. Municipalities are entitled to be reimbursed for their expenses, and the court agrees with the police report that increased police calls to the area as a direct result of the arcade are inevitable. But whether these costs will bear a rational relationship to the aggregate license fee of $5250 ($150 X 35 machines) in subsequent years remains to be seen but is highly improbable. In determining a reasonable license fee, a municipality may not include services which are rendered to all commercial establishments. Only those additional services directly related to the license may be considered in the setting of the license fee.
Thus, it is the opinion of this court that a $150 license fee per machine is reasonable, but the aggregate fee of $5250 for the first year is not rationally related to the municipality's costs in administering this application for 35 machines.

V

VALIDITY OF LICENSING MORATORIUM OF 18 MONTHS DURATION
On July 18, 1982 subsequent to the denial of plaintiff's application for a license, Hillside adopted an ordinance establishing a moratorium on the issuance of licenses for mechanical amusement devices to enable the municipality to form a legislative regulatory plan for the health, welfare and safety of its citizens as they relate to the commercial use of these devices.
The power of a municipality to pass ordinances is limited by and derived from legislative authorization, and those delegated powers are liberally construed. Paramus v. Martin *100 Paint Stores, Inc., 121 N.J. Super. 595, 599 (Law Div. 1972) app. dism. 128 N.J. Super. 138 (1974); N.J. Const. (1947), Art. IV § VII, par. 11; Fred v. Old Tappan, 10 N.J. 515, 518 (1952); Moyant v. Paramus, 30 N.J. 528, 534-535 (1959).
The municipality is granted the power to license and regulate "places of public amusements" under N.J.S.A. 40:52-1. This power is granted pursuant to the municipal police power to protect the general health, welfare and safety of its citizens. Trombetta v. Atlantic City, 181 N.J. Super. 203, 226 (Law Div. 1981). The power to pass a moratorium is based on this power to regulate. But, it can only be permitted "subject to constitutional limitations that it not be unreasonable, arbitrary or capricious, and that means selected via such legislation shall have real and substantial relation to the objects sought to be attained. Gabe Collins Realty, Inc. v. Margate, 112 N.J. Super. 341, 346, 347 (App.Div. 1970)." Trombetta, supra, 181 N.J. Super. at 226.
The validity of a municipal ordinance is presumed, and the burden of proof rests on the challenger to persuade the court that an ordinance is invalid. Hutton Park Gardens v. W. Orange, 68 N.J. 543, 564, 565 (1975).
Plaintiff has argued that moratoriums are prohibited under the Municipal Land Use Act, N.J.S.A. 40:55D-90(a) in which "prohibition of development in order to prepare a master plan and development regulations is prohibited." However, not all zoning mortatoriums are prohibited. A building moratorium on land development in the New Jersey pinelands during a limited time period to permit the study and planning of a comprehensive environmental safeguard plan has recently been upheld. Orleans Bldrs. & Developers v. Byrne, 186 N.J. Super. 432 (App.Div. 1982).
Furthermore, N.J.S.A. 40:55D-90 prohibition is not applicable here because the instant prohibition is not on land development and is not for the purpose of preparing a zoning plan or zoning regulations.
*101 This moratorium is a valid exercise of the municipal police power to regulate licensed businesses. Although no New Jersey case law could be found on licensing moratoriums, the issue of moratoriums was discussed in zoning cases prior to the enactment of N.J.S.A. 40:55D-90(a). In Campana v. Clark Tp., 82 N.J. Super. 392 (Law Div. 1964) this court upheld an ordinance which was in effect a moratorium on the construction of multi-family dwellings for 31 months in order to prepare a new zoning ordinance. This court held that 31 months was not an unreasonable exercise of the municipality's police power. It stated: "The mere passage of time alone is not the sole determining factor of the reasonableness or unreasonableness of the `stop gap' ordinance. We must look to the progress of the study being made, its nearness to completion, and the prospects for passage of a new zoning ordinance." 82 N.J. Super. at 397. In that case this court was impressed with the "`good faith' attempt ... to expedite the new master plan." Id.
Our Supreme Court commented upon permissible time frames for "stop gap" zoning measures which would be unconstitutional if they were not temporary. Deal Gardens v. Loch Arbour, 48 N.J. 492, 500 (1967). It stated that this municipal power must be strictly limited and "exercised with great caution.... Each situation must be assayed in its own particular factual setting to ascertain whether the elapsed time during which the ordinance has been in effect is reasonable." Id.
The presumption of validity attaches to this moratorium ordinance as well as to all other municipal ordinances. Hutton Pk. Gardens v. W. Orange, 68 N.J. 543, 564, 565 (1975). The burden of proof is on plaintiff to prove that the 18 month moratorium period is unreasonable. At trial, Peter Corvelli, a member of the Hillside Township Committee, testified that one of the basic purposes of the moratorium was to provide the police and fire departments with sufficient time to study and submit reports on the effect of these games on the health, welfare and safety of the community. Yet, he admitted on *102 cross-examination that fully five months after adoption of the moratorium neither the police department nor the fire department had even been informed of their obligation to study and report. In addition, although the Township Committee had met 20 times since passage of the ordinance, the moratorium had not been discussed, no committee hearings had occurred, and no reports by anyone had been submitted.
This court is concerned about this inordinate delay in effectuating the announced purposes of the moratorium. However, 18 months does not appear to be an unreasonable, arbitrary or capricious amount of time considering the length of other moratoriums upheld. See Campana, supra, (31 months); Meadowland Reg. Dev. Agcy. v. Hackensack, 119 N.J. Super. 572 (App. Div. 1972) cert. den., 62 N.J. 72 (1972), (26 months). However, this apparent lack of a good faith effort to develop a regulatory ordinance will be a primary concern of this court should an application for an extension of this moratorium occur.
Therefore, it is the opinion of this court that the moratorium is a valid exercise of the municipality's police power.

VI

PLAINTIFF'S APPLICATION IS SUBJECT TO MORATORIUM
It is a well settled principle in New Jersey that the court should apply the law which is in effect at the time of its decision. Kruvant v. Cedar Grove Mayor & Tp. Counc., 82 N.J. 435, 440 (1980); Darrell v. Clark, 82 N.J. 426 (1980). The time of decision rule necessitates a finding by this court that the moratorium controls all licensing applications for mechanical amusement devices, including plaintiff's.
Testimony before this court revealed no vested right or substantial change in position or investment by plaintiff which would sustain a finding by the court that this time of decision rule violates plaintiff's due process rights.
*103 Therefore, it is the opinion of this court that plaintiff's application must await the outcome of the moratorium.

VI

SUMMARY
For the reasons set out above, it is the opinion of this court that
1. Plaintiff need not exhaust his administrative remedies.
2. Video games are permitted uses in HC and LI zones in Hillside Township.
3. The Hillside Licensing Ordinance is constitutional and valid.
4. The increased licensing fee is rationally related to the municipal costs and, therefore, valid for a single machine. However, it is invalid for several machines in the same location.
5. The Hillside moratorium ordinance is a valid exercise of the municipal police power to regulate licensed businesses and plaintiff's application is subject to said ordinance and any new ordinances resulting therefrom.
6. The denial of plaintiff's application is reversed and remanded.

CHAPTER VII

LICENSING  GENERAL[***]

7-1 General Provisions.
7-1.1 Purpose. The purpose of this section is to provide a uniform set of procedures for administering the issuance, renewal and revocation of all licenses issued by the township, except alcoholic beverage licenses, dog licenses, cat licenses and taxicab licenses.
7-1.2 Application for License. All applications for licenses shall be accompanied by the required license fee and shall be made to the proper issuing authority on forms provided by him, and shall contain the following information:
*104 a. Name and permanent and local address of the applicant. If the applicant is a corporation, the name and address of its registered agent.
b. If the licensed activity is to be carried on at a fixed location, the address and description of the premises.
c. If the applicant is employed by another, the name and address of the employer, together with credentials establishing the exact relationship.
d. A description of the nature of the business and the goods, property or services to be sold or supplied.
e. A statement as to whether the applicant has been convicted of any crime or the violation of any municipal ordinance other than traffic offenses and, if so, the date and place of conviction, the nature of the offense and the punishment or penalty imposed.
f. Appropriate evidence as to the good character and business responsibility of the applicant so that an investigator may properly evaluate his character and responsibility.
Applications by partnerships shall be signed by all partners with the information required by this subsection supplied in detail as to each partner. Applications of corporations shall have attached individual statements containing all the information required by this subsection relating to each employee or agent who shall engage in the licensed activity, and shall be signed by the authorized corporate officer.
Where required by the police chief, two photographs, not over one year old, showing applicant's face, front and profile, of a minimum size of 1 1/2 inches by 1 1/2 inches, shall be affixed to the application.
7-1.3 Investigation of Applicants. Each application shall be referred to the police chief or a police officer designated by him, who shall immediately institute whatever investigation of the applicant's business responsibility, moral character and ability to properly conduct the licensed activity he considers necessary for *105 the protection of the public. He shall communicate his findings in writing to the township clerk within a reasonable time after the application has been filed. If the investigator decides that the applicant's character, ability or business responsibility is unsatisfactory, or the products, services or activity are not free from fraud, he shall disapprove the application and the clerk shall refuse to issue the license and so notify the applicant. Otherwise, the clerk shall issue the license immediately, provided the required license fees have been paid, except in cases where approval of the township committee is required. In the case of an application for a solicitor's, peddler's or canvasser's license, the license may be issued immediately by the issuing authority subject to the investigation. In the event of the refusal of the issuance of a license, the applicant may appeal to the township committee for a hearing. The appeal shall be filed in writing with the clerk within 14 days after notification of the refusal. The township committee shall hold its hearing with 14 days after filing of the appeal. The township committee shall promptly announce its decision and if it denies the application shall state the grounds for its decision.
7-1.4 Contents of License. Licenses shall be in a form which the township committee prescribes by resolution and shall contain the following information:
a. The name and address of the licensee.
b. The number and type of the license and the nature of the licensed activity.
c. The address at which the licensed activity is conducted, if the activity is carried on at a fixed location.
d. The expiration date of the license.
e. Any other appropriate information which the township committee may require by resolution.
7-12.3 Location on Sidewalks Prohibited. No goods, wares or merchandise shall be placed by the licensee on the sidewalk or any part thereof, nor shall the licensee use the street or any part *106 thereof for the display and sale of any goods, wares and merchandise.
7-12.4 Restriction on Transfer. No licensee shall be authorized to conduct the business on any premises other than the premises specified in his license. The license shall not be transferable or assignable to another person or transferable to another plot or lot.
7-12.5 License Fee. The annual license fee shall be fifty ($50.00) dollars.

7-13 Games of Chance; Bingo and Raffles.
7-13.1 Purpose; Administration. The purpose of this section is to regulate all games of chance held, operated or conducted within the township, pursuant to the Acts of the Legislature of the State of New Jersey known as the "Bingo Licensing Law" and the "Raffles Licensing Law," and in accordance with the rules and regulations issued or to be promulgated by the Legalized Games of Chance Control Commission in the Department of State of the State of New Jersey. All applications, licenses and proceedings in connection therewith shall be subject to the provisions of the Acts and the rules and regulations, and any laws, rules and regulations hereafter enacted; and shall be further subject to the provisions of this section.
7-13.2 Organizations Eligible for License. No license to conduct a game of chance as authorized by law shall be issued to any organization not having a bona fide situs established in good faith within the township and actively engaged in serving one or more of the authorized purposes as defined by the rules and regulations of the Legalized Games of Chance Control Commission.
7-13.3 Times When Permitted. In accordance with state law, licensed organizations are authorized to hold and operate games of chance commonly known as bingo or lotto and raffles on Sundays.

7-14 Mechanical Amusement Devices.
*107 7-14.1 Definitions. As used in this section:
a. "Juke box" shall mean any music vending machine, contrivance or device which, upon the insertion of a coin, slug, token, plate, disc or key into any slot, crevice or other opening, or by the payment of any price operates or may be operated for the emission of songs, music or similar amusement.
b. "Mechanical amusement device" shall mean any machine, which upon the insertion of a coin, slug, token, plate or disc, may be operated by the public generally for use as a game, entertainment or amusement, whether or not registering a score. It shall include such devices as marble machines, pinball machines, skill ball, mechanical grab or transactions similar thereto under whatever name they may be indicated.
c. "Operator" shall mean any person in whose place of business any juke box or mechanical amusement device is displayed for public patronage or is placed or kept for operation by the public.

7-14.2 License Required.

a. Operators. No operator shall display for public patronage or keep for operation any juke box or mechanical amusement device without first having obtained an operator's license.
b. Exemptions. This section shall not apply to any church or bona fide veterans, charitable, educational, religious, civic or fraternal organization, provided that the organization is organized on a nonprofit basis and does not have a plenary retail consumption license issued by any alcoholic beverage control board.
7-14.3 Additional Application Information. In addition to the requirements of subsection 7-1.2, the application shall indicate the place where each machine or device is to be displayed or operated and the business conducted at that place.
7-14.4 Fees. The annual fees for licenses required by this section shall be as follows:
*108 Operator's license, fifty ($50.00) dollars for each juke box or mechanical amusement device licensed, except in the case of a pinball machine, in which case the license fee shall be five hundred ($500.00) dollars.

7-14.5 Rules and Regulations.

a. No device required to be licensed under this section shall be so placed in any premises as to interfere with or obstruct any entrance or exit or to create a fire or safety hazard.
b. No device required to be licensed under this section shall be placed, operated, maintained or used on the premises in any back or adjoining room behind closed or barred doors.
c. No operator shall permit any device required to be licensed under this section to be used for the purpose of gambling, nor shall any operator offer or permit to be offered any prizes or awards whether in cash or otherwise, as an inducement to using or playing such devices.
d. No operator shall knowingly permit any person convicted of a crime involving moral turpitude to be associated with him in the ownership or management of the business or to be in his employ.
e. No operator shall permit any minor under the age of 16 years unaccompanied by a parent or guardian to remain on the premises after 10:00 p.m.
f. No operator shall permit any activity which is illegal or immoral or which creates an undue amount of noise or a danger of a breach of the peace to occur on the premises.
7-14.6 Seizure and Destruction of Machines. If the police chief has reason to believe any mechanical amusement device is being used as a gambling device, such machine may be seized by the police and impounded; and if upon trial of the operator for allowing it to be used as a gambling device the operator is found guilty, such machine shall be destroyed by the police. Revocation and seizure shall be in addition to all other penalties.

*109 7-15 Bowling Alleys, Skee Ball Alleys, and Pool and Billiard Rooms.
7-15.1 License Required. No person shall own, operate or conduct any business for profit which includes the use of bowling alleys, skee ball alleys, or pool or billiard tables without first having obtained a license.
7-15.2 Fees. The annual fees for licenses required by this section shall be as follows:
a. Bowling alleys, twenty-five ($25.00) dollars for the first bowling alley, twenty ($20.00) dollars for the second alley, and fifteen ($15.00) dollars for each additional alley.
b. Skee ball alleys, fifty ($50.00) dollars for each alley.
c. Pool or billiard tables, twenty-five ($25.00) dollars for each table.
NOTES
[*] A copy of the pertinent portions of this licensing ordinance is attached.
[**] C.O. means a Certificate of Occupancy.
[***] The general power to license and to prescribe license fees is contained in R.S. 40:52-1, 2. Licensing is also a part of the general police power granted by R.S. 40:72-3 and R.S. 40:48-2.