276 N.J. Super. 361 (1994)
647 A.2d 1386
RALPH MAGLIOCHETTI, PLAINTIFF,
v.
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
June 3, 1994.
*364 Thomas Olson, for plaintiff (McKirdy and Riskin, attorneys).
Susan R. Roop, D.A.G., for defendant (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
*365 MINIMAN, J.S.C.
The parties cross-move on undisputed facts for a summary declaration of their rights and obligations under the New Jersey Highway Access Management Act, N.J.S.A. 27:7-89 to -98, which provides a statutory and regulatory framework for managing access to state highways. The State of New Jersey by the Commissioner of Transportation (the Commissioner) has determined to relocate Route 46 in Clifton to the south of its now-abutting line with the property owned by plaintiff Ralph Magliochetti (Magliochetti). In addition, as part of the highway redesign, the Commissioner will create a service road parallel to the relocated Route 46 that will be constructed partially on the existing roadbed for the westbound lanes of Route 46 and partially on a triangular piece from the southerly line of Magliochetti's property. Finally, the Commissioner will provide access to Magliochetti's restaurant, "The Lily Pond," via a street perpendicular to the service road and will revoke his current access permit.
Magliochetti contends that the reasonableness of the proposed alternative access is an issue to be determined by a jury as an element of the damages in the eminent domain action to be instituted by the Commissioner with respect to the partial taking of his property. The Commissioner contends that the issue of reasonable access must be decided in the first instance by an administrative law judge who has expertise in such access issues and that the administrative law decision will then be binding in the eminent domain action. For the reasons stated hereafter, exhaustion of administrative remedies is not required.
Preliminarily, the court must briefly address the contention of the Commissioner that Magliochetti's complaint should be dismissed because this court lacks subject matter jurisdiction of this dispute. The Commissioner argues that the Department of Transportation has exclusive jurisdiction to determine the existence of reasonable alternative access and to revoke access permits under N.J.S.A. 27:7-93. The Commissioner misconstrues the nature of Magliochetti's complaint, which is an action for a declaratory *366 judgment. Jurisdiction of such an action is found in the Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50 to -62. That Act provides that "[a] person ... whose rights ... are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights ... thereunder." N.J.S.A. 2A:16-53. Where the question is purely one of interpretation of a statute and its application to undisputed facts, subject matter jurisdiction exists in the Law Division of the Superior Court. Registrar & Transfer Co. v. Director, Div. of Tax., 166 N.J. Super. 75, 78, 398 A.2d 1335 (App.Div.), certif. denied, 81 N.J. 63, 404 A.2d 1161 (1979). This is precisely the relief sought and the Commissioner's jurisdictional argument is thus without merit.
Magliochetti's property currently fronts on the northerly line of Route 46 three blocks west of its intersection with Crooks Avenue and Route 20. The nearest intersecting street is East Fourth Street which bounds the property on the east. The westerly line abuts an entrance ramp to the Garden State Parkway. There are two curb cuts from Route 46 West directly into the parking lot for Magliochetti's restaurant, permitting westbound traffic direct access to The Lily Pond parking lot. Traffic eastbound on Route 46 currently accesses the restaurant by proceeding onto Route 20 North and making a U-turn around McDonald's Restaurant at a point approximately 2000 feet beyond plaintiff's property. Patrons then head south on Route 20 to merge into Route 46 westbound. Traffic southbound on Route 20 (which terminates at Route 46) merges into Route 46 West at a point east of Magliochetti's property and thus has direct access to the restaurant.
Patrons returning to locations to the east and north of Magliochetti's restaurant head west on Route 46 a distance of about 1900 feet to the Lexington Avenue interchange. There traffic can make a U-turn, head east on Route 46 and, after passing The Lily Pond, access Route 20 North and Crooks Avenue or remain on Route 46 East. Patrons returning to locations west of the subject property have direct access onto Route 46 westbound.
*367 To summarize, customers of Magliochetti's restaurant who intend to return to the location from which they travelled in reaching his property have to make one approximately 4000-foot loop on one leg of their round trip but have direct access to and from his property on the other leg.
On July 29, 1992, the state informed Magliochetti of its intent to take a portion of his property in connection with revisions to Route 46 and the entrance ramp to the Garden State Parkway in the vicinity of his restaurant. The entire project includes the reconstruction of the bridge over the Passaic River that connects Elmwood Park with Clifton and Paterson, the realignment of Route 46 closer to the Passaic River on the Clifton side, and the construction of a new overpass at the intersection of Crooks Avenue and Routes 46 and 20.
On January 4, 1993, the Commissioner informed Magliochetti that the project would require revocation of his direct access to Route 46 westbound. He was informed that the Commissioner had determined that reasonable alternative access would be available via his existing driveways to East Fourth Street and that he had a right to a hearing regarding the sufficiency of the proposed alternative access. Magliochetti was advised that if he chose to appeal the proposed action, a hearing would be scheduled before an administrative law judge and that if he did not respond within 30 days, his right to a hearing would be deemed waived. On January 21, 1992, Magliochetti notified the Commissioner that he wished to appeal the proposed action.
The proposed construction will eliminate all Route 46 frontage from Magliochetti's property and will eliminate direct Route 46 access to or from his property. The Commissioner proposes to condemn a triangular portion of Magliochetti's property from sideline to sideline along the existing westbound lanes of Route 46. The property taken will be used in conjunction with the existing roadbed to create a service road from which local commercial establishments can be accessed. No curb cuts from the service road will be allowed in front of his property. Magliochetti contends *368 that the realignment of Route 46 and the creation of the service road deprive his customers of reasonable access to the state's highways.
After construction, eastbound traffic on Route 46 will have to cross the Passaic River, exit on the jughandle for River Road, go north under Route 46 and take the jughandle for Route 46 West. Magliochetti's patrons will then cross the Passaic River again, take the exit for Crooks Avenue, make a left on the service road and proceed three blocks to the subject property. The Commissioner estimates that the total distance traversed on this more complicated loop will be about one mile. To return to the direction from whence they came, these patrons will have to retrace their path along the service road to Crooks Avenue and take the entrance ramp onto Route 46 East and repeat the above-described double crossing of the Passaic River, ultimately passing the subject property on the realigned highway after another mile-long, complicated loop. Thus, patrons travelling from the west of Magliochetti's establishment will, on a round trip, travel 2.65 times the distance currently required to patronize Magliochetti's restaurant.
Traffic headed west on Route 46 will have to exit the highway to the left immediately after crossing the Passaic River and take Crooks Avenue to the service road. So long as the patron knows to take this Crooks Avenue exit, access to the subject property from the east does not appear to be substantially different than it is presently, and return access to Route 46 eastbound is more direct, the customers merely retracing the path by which they arrived. However, prospective customers who remain on the realigned Route 46 and become interested in patronizing The Lily Pond as they pass the restaurant will have to proceed west on the 3800-foot loop around Lexington Avenue, pass the subject property as they head east, and then make the mile-long, complicated loop across the Passaic River and back to gain access to the service road and, ultimately, Magliochetti's property via East *369 Fourth Street. If they miss East Fourth Street, they may have to take a trip on the Garden State Parkway.
Patrons heading south on Route 20 will not experience any significant change in their approach to the subject property, exiting onto the service road just as they now merge onto Route 46 West. They will not, however, be able to head west on Route 46 to make the Lexington Avenue 3800-foot loop. Rather, they will have to head back the way they came, on the service road, turn right on Crooks Avenue, exit onto Route 46 East, cross the Passaic River twice, take the exit for Crooks Avenue and then exit for Route 20 North. It is not clear whether this more complicated loop is longer or shorter than the Lexington Avenue loop.
After seeking a hearing, Magliochetti retained counsel who informed the Commissioner on May 7, 1993, that the Commissioner of Transportation had failed to conduct a hearing prior to determining to revoke Magliochetti's direct access to Route 46 and also took the position that the dispute over revocation of access should be determined in the forthcoming condemnation proceeding. Magliochetti then sought, and on June 3, 1993, was granted, a stay of proceedings in the Office of Administrative Law pending the issuance of a declaratory judgment in this action.
In 1989, the New Jersey Legislature enacted the State Highway Access Management Act, N.J.S.A. 27:7-89 to -98 (hereinafter designated as "The Act"), and required the Commissioner to adopt a state highway access management code to establish a general classification system for the state's highways. N.J.S.A. 27:7-91. That Code, effective in 1992, is found at N.J.A.C. 16:47-1.1 to -9.1.
Included among the legislative findings and declarations which form a part of the Act are the following statements:
e. Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.
f. Governmental entities through regulation may not eliminate all access to the general system of streets and highways without providing just compensation.

*370 g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.
[N.J.S.A. 27:7-90.]
The gravamen of the Act and the Code is regulation of the issuance of access permits. However, the Act does authorize the Commissioner to revoke existing access permits after written notice and hearing if the Commissioner determines that alternative access is available which conforms to the Act. N.J.S.A. 27:7-94a. The criteria for determining the existence of conforming alternative access are specific to the use to which the property is put. N.J.S.A. 27:7-94c. For property used for commercial purposes, concededly the case here, the Act provides that alternative access is "assumed to exist if the property owner enjoys reasonable access to the general system of streets and highways in the State" and in addition will have
access onto any parallel or perpendicular street, highway, easement, service road or common driveway, which is of sufficient design to support commercial traffic to the business or use, and is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway. ...
[N.J.S.A. 27:7-94c(1) (emphasis added).]
Before an access permit can be revoked, the Commissioner must provide all "necessary assistance" to the property owner in establishing the alternative access, including funding of all improvements. N.J.S.A. 27:7-94d. This includes, for example, the cost and expenses of relocation and removal associated with engineering installation of access drives in a new location or locations, removal of old driveways, on-site circulation improvements to accommodate changes in access drives, landscaping, replacement of directional and identifying signages and the cost of any lands, or any rights or interests in lands, and any other right required to accomplish the relocation or removal. N.J.S.A. 27:7-94d. The permit shall not be revoked until reasonable alternative access is completed and available for use. N.J.S.A. 27:7-94d.
When the Commissioner revokes an existing permit in accordance with N.J.S.A. 27:7-94 because alternative access is available, "the decision of the commissioner as to the appropriate *371 location for an access driveway shall be final...." N.J.S.A. 27:7-95b. In lieu of providing reasonable alternative access when revoking a permit, "the commissioner may acquire, by purchase or condemnation, any right of access to any highway upon a determination that the public health, safety and welfare require it." N.J.S.A. 27:7-98.
Magliochetti in essence contends that the action of the Commissioner is simply an exercise of the power of eminent domain and that his loss of direct access to Route 46 westbound is inextricably intertwined with the condemnation of all of his Route 46 frontage and the proposed creation of a parallel service road between his property and Route 46. He argues that he has a right to have a jury determine whether the alternative access to Routes 46, 20 and the state's system of highways is reasonable and, if not, to secure compensation for the loss of direct access in the soon-to-be-instituted eminent domain suit. The Commissioner's plan to deny curb cuts on the service road, Magliochetti asserts, is a minor and possibly irrelevant issue in this regard and is not disputed by him.
The Eminent Domain Act of 1971 is not an enabling statute; it merely provides a uniform procedure to be followed in condemnation proceedings. Hillsborough v. Robertson, 260 N.J. Super. 37, 42, 614 A.2d 1374 (Law Div. 1992). Under the Eminent Domain Act, the Law Division has jurisdiction of all matters in condemnation and all matters incidental thereto, including jurisdiction to determine the authority to exercise the power of eminent domain, to compel the exercise of such power, to fix and determine the compensation to be paid, to determine the parties entitled to compensation, and to determine title to all property affected by the action. N.J.S.A. 20:3-5; Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n, 98 N.J. 258, 265, 486 A.2d 330 (1985). The power to fix and determine compensation includes the power to determine the elements of damage caused by the taking. It has long been recognized that in the case of a partial taking, the owner is entitled to the value of the land taken *372 and to the diminution in the value of the remainder attributable to the taking. Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 125, 145 A.2d 306 (1958). In some cases, a change in access may be compensable.
Under the common law and the Act, loss of all highway access is compensable. High Horizons Dev. v. Department of Transp., 120 N.J. 40, 48, 575 A.2d 1360 (1990); N.J.S.A. 27:7-90f. As to a loss of less than all access, the High Horizons court, in dicta, observed that the Act confirmed existing common law principles that a property owner does not have a protected right to direct access to the highway itself but only a right to reasonable access to the state's system of highways. Id. The Court stated:
It seems to be agreed in New Jersey, as elsewhere, that in the absence or denial of all highway access, "[t]he general rule is that the property owner is not entitled to access to his land at every point between it and the highway but only to `free and convenient access to his property and the improvements on it.'" Mueller v. New Jersey Highway Auth., 59 N.J. Super. 583, 595, 158 A.2d 343 (App.Div. 1960). Reasonable highway regulations will not give rise to a claim for compensable taking. This doctrine has been summarized: "[A]n owner of land abutting a highway may not be shut off from all access thereto, but his right of access must be consonant with traffic conditions and reasonable and uniform police requirements." State Highway Comm'r v. Kendall, 107 N.J. Super. 248, 252, 258 A.2d 33 (App.Div. 1969). "[L]imitation of access, so long as reasonable access to the highway system remains, is not a taking by eminent domain, but is accomplished under the police power, and is not compensable." Commonwealth, Dep't of Highways v. Denny, 385 S.W.2d 776, 777 (Ky. 1964).
[Id. 120 N.J. at 48, 575 A.2d 1360.]
Two years prior to the effective date of the Act, without the taking of any property, the Commissioner instituted an action against National Amusements seeking to deny it all access to Routes 1 and 9 in the vicinity of the Pulaski Skyway and seeking a declaration that the denial of such access was not compensable. Access to the property remained available through a circuitous route over the city streets of Newark. The Appellate Division, adopting the above dicta from High Horizons, reversed the trial court's determination that the property owner had a common law right of direct access to Routes 1 and 9 and that the loss of access was compensable. Comm'r of Transp. v. National Amusements, *373 244 N.J. Super. 219, 222, 225-26, 581 A.2d 1353 (App.Div. 1990), certif. denied, 127 N.J. 327, 604 A.2d 601 (1991). After quoting the standards found in the Act for determining the reasonableness of alternative access, the court concluded:
On remand, the issue before the trial judge will require the analysis of the question of reasonableness of the new access, which in turn is dependent upon the use of the property and the expected traffic flow. The trial judge shall make the threshold determination under High Horizons and the statute whether the State has taken a compensable property interest.... If so, National Amusements is entitled to have its compensation assessed by condemnation commissioners, a condemnation jury, or a later court; if not, plaintiff is entitled to its requested order.
[Id. 244 N.J. Super. at 225-226, 581 A.2d 1353 (citation omitted).]
In Comm'r of Transp. v. Van Nortwick, 260 N.J. Super. 555, 617 A.2d 284 (App.Div. 1992), the Commissioner condemned a strip of land across the entire frontage of Van Nortwick's property on Route 37 in Dover Township for construction of a deceleration lane and exit ramp. Before the taking, access to Route 37 was available along the entire frontage. After the taking, access was limited to the easterly half of the front line. The trial court permitted the jury to consider evidence of diminution in the value of the remainder attributable to the reduction in direct access, despite the fact that the experts for both parties conceded that the remaining access was reasonable. The Appellate Division held that the trial court erred by refusing to exclude diminution of access as an element of damages in light of the conceded reasonableness of the remaining access. Id. at 558-559, 617 A.2d 284. "An abutting owner has no vested right to a particular access to a highway; provided the remaining access is reasonable, any damages that may be sustained because of a change or diminution of that access does not constitute an element of damage to the land and is not compensable." Id. at 559, 617 A.2d 284.
Here, as in National Amusements, supra, there will be a complete loss of direct access to Route 46 and the property owner contends that the alternative access is unreasonable. Also here, as in Van Norwick, there will be a taking of property and a condemnation proceeding will be instituted to determine the value of the property taken and the damage to the remainder. The *374 issue of whether the alternative access is unreasonable, triggering a right to compensation, is and has long been encompassed within this court's jurisdiction to compel the exercise of the power of eminent domain and to determine the compensation to be paid for a taking.
Nevertheless, the Commissioner contends that the reasonableness of alternative access to the state's system of highways is now an issue which must be decided by an Administrative Law Judge in a separate proceeding under the Highway Access Management Act. He argues that exclusive jurisdiction of highway access is vested in the agency, that the Act provides for notice and hearing, and that Magliochetti must exhaust his administrative remedies. Of course, the Eminent Domain Act does not ipso facto relieve a property owner of the obligation to exhaust administrative remedies; relief under that statute may be denied until resort to the administrative process is complete. Toll Bros. v. Department of Envtl. Prot., 242 N.J. Super. 519, 531, 577 A.2d 845 (App.Div. 1990).
In general, if an appropriate administrative remedy is available, it should be fully explored before judicial action is taken. Abbott v. Burke, 100 N.J. 269, 296, 495 A.2d 376 (1985). The doctrine of exhaustion of administrative remedies serves three primary goals:
(1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.
[City of Atlantic City v. Laezza, 80 N.J. 255, 265, 403 A.2d 465 (1979).]
The first goal is particularly important where the ultimate decision rests upon the factual determinations lying within the expertise of the agency or where agency interpretation of the relevant statutes or regulations is desirable. Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 387, 396 A.2d 573, cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). The second goal is self-explanatory. The third goal requires the *375 parties to pursue available procedures to their appropriate conclusion and correlatively awaiting their final outcome before seeking judicial intervention. Garrow v. Elizabeth Gen. Hosp. and Dispen., 79 N.J. 549, 559, 401 A.2d 533 (1979). This is so because interruption of the administrative process is not justifiable to any greater extent than interference with the trial process by interlocutory appeals. Id. The expertise of an administrative agency may not be exercised or known until it renders its final decision and usually due deference is accorded such expertise upon judicial review. Id.
However, the exhaustion-of-administrative-remedies rule is "one `of convenience, not an indispensable pre-condition.'" Abbott, supra, 100 N.J. at 297, 495 A.2d 376. The rule is neither jurisdictional nor absolute. Garrow, 79 N.J. at 561, 401 A.2d 533; Swede v. City of Clifton, 22 N.J. 303, 315, 125 A.2d 865 (1956); Student Members of Playcrafters v. Board of Educ. of Teaneck Tp., 177 N.J. Super. 66, 73, 424 A.2d 1192 (App.Div.), aff'd, 88 N.J. 74, 438 A.2d 543 (1981). The exhaustion rule vests the court with discretion to determine whether the interests of justice require that the administrative appeal process be bypassed. Redeb Amusement, Inc. v. Tp. of Hillside, 191 N.J. Super. 84, 91, 465 A.2d 564 (Law Div. 1983). No rigid formula can be prescribed for the exercise of that discretion. Id. It has been held that the exhaustion rule does not apply when only a question of law exists, when administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision. Garrow, supra, 79 N.J. at 561, 401 A.2d 533.
The exhaustion rule thus has a limited application and where, as in New Jersey, administrative jurisdiction over the subject matter is not primary and exclusive, there is no occasion for invoking the rule unless an essentially administrative issue involving agency expertise and discretion is involved. Swede, supra, 22 N.J. at 315, 125 A.2d 865. Except where the legislature vests exclusive primary jurisdiction in an agency, a plaintiff may *376 seek relief in the trial courts. Abbott, supra, 100 N.J. at 297, 495 A.2d 376. Nevertheless, in any case amenable to administrative review, the trial court should consider, upon a defendant's timely application, whether exhaustion of administrative remedies will serve the interests of justice. Id. Where the issues are especially fact sensitive and related primarily to areas of administrative expertise, then exhaustion is proper. Id.
The Commissioner is correct in contending that he has primary and exclusive jurisdiction to determine access to state highways under the Act. Magliochetti does not seek to disturb the Commissioner's final decision under N.J.S.A. 27:7-95b locating driveways on East Fourth Street. His claim for compensation for the loss of access does not invade this primary and exclusive jurisdiction. However, the Act does not provide such finality to the Commissioner's decision as to whether alternative access is reasonable under N.J.S.A. 27:7-94c(1), or if not, to acquire the right of access by purchase or condemnation under N.J.S.A. 27:7-98. No legislative intent can be gleaned from the Act to deprive courts of the power under the Eminent Domain Act, N.J.S.A. 20:3-5, to determine whether a taking of access will occur and to compel the exercise of the power of eminent domain. Thus, the courts and the agency share jurisdiction over this issue. Nonetheless, this court has discretion to require exhaustion in a proper case. However, this is not such a proper case as the three primary goals of the doctrine of exhaustion will not be served.
First, the decision of the administrative law judge will not obviate resort to the courts. No matter what decision is made, the eminent domain action will proceed. In addition, the decision made may well be the subject of an appeal, resulting in a duplication of actions in the courts.
Second, development of a factual record is not necessary. This is not a case where a property owner seeks new access and wishes to develop facts to be considered by the agency in its decision to grant or deny access. Rather, the agency has developed the facts supporting its determination to exercise its power of eminent *377 domain in taking a portion of the subject property, a taking which results in revocation of all direct access. Both parties have stipulated to undisputed facts and neither urges that additional facts need to be developed.
Finally, this is not a case where the ultimate decision will rest on factual determinations lying within the expertise of the agency. Those factual determinations have already been made by the agency prior to announcing the partial taking of Magliochetti's property. The only issue which will be resolved by the administrative law judge is whether the alternative access is reasonable. When the manner of access is undisputed, as is the case here, the determination of whether it is "reasonable" is a conclusion to be drawn from the undisputed facts.[1]Lima & Sons, Inc. v. Borough of Ramsey, 269 N.J. Super. 469, 478, 635 A.2d 1007 (App.Div. 1994). The average juror is just as capable of deciding whether "motorists will have a convenient, direct, and well-marked means of reaching the site and returning to the State highway" as is an administrative law judge. Requiring exhaustion of administrative remedies with respect to revocation of direct access, where the loss of access is caused by a partial taking of a property owner's entire highway frontage to create a service road that will have no direct access to the highway, would be futile and interfere with a prompt judicial decision on the compensation to be paid for the taking. The reasonableness of alternative access shall be determined in the condemnation action.
NOTES
[1] Indeed, where only one reasonably justifiable conclusion can be drawn, the issue may be resolved summarily. Lima & Sons, 269 N.J. Super. at 478, 635 A.2d 1007; State v. Interpace Corp., 130 N.J. Super. 322, 327-28, 327 A.2d 225 (App.Div. 1974). Such may be the case here, as the proposed alternative access is hardly convenient and direct. The issue, however, is not before the court.