BENJAMIN J. ADDIEGO AND ANTHONY ADDIEGO, PLAINTIFFS, v. STATE OF NEW JERSEY AND NEW JERSEY STATE BOARD OF DENTISTRY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 12, 1978.

*Messrs. Jamieson, McCardell, Moore, Peskin* and *Spicer* for plaintiffs (*Mr. Arthur Meisel* appearing).

*Mr. John J. Degnan,* Attorney General of New Jersey, for defendants (*Mr. Heikki Leesment,* Deputy Attorney General, appearing).

SCHOCH, A. J. S. C. In this litigation plaintiffs, both licensed dentists specializing in orthodontics, seek a declaratory judgment that certain sections of *Title* 45 are unconstitutional, thereby preventing defendant Board from proceed-

ing with any hearings to discipline the plaintiffs for violating those sections.

At the trial, the following facts were stipulated:

1. Plaintiffs are dentists licensed to practice in the State of New Jersey pursuant to *N. J. S. A.* 45:6-1 *et seq.*
2. Plaintiffs specialize in orthodontics.
3. Defendant State Board is a state agency created and empowered to regulate the practice of dentistry.
4. On or about November 10, 1976 defendant State Board caused a regulatory board proceeding to be commenced against plaintiffs for alleged violations of *N. J. S. A.* 45:6-7(d) and (e).
5. The law, as understood and applied by defendant State Board, prohibits licensed dentists from delegating the following functions to a dental auxiliary, notwithstanding that said functions are performed upon the direction and under the supervision and control of a licensed dentist:
   (a) Preliminary sizing of orthodontic bands by placing preformed ovular bands over the patient's teeth prior to final selection by the dentist of the appropriate size band;
   (b) Removal of the excess cement from patient's teeth after the dentist had cemented the orthodontic bands in place;
   (c) Ligating a preformed archwire, selected by the dentist, in a fully seated position in an edgewire bracket, and
   (d) Removal of an archwire.

Evidence was presented at the trial from which I find that the usual treatment given by orthodontists is, performed in the following steps:

1. Examination of the patient using whatever diagnostic aids are required to determine the need for orthodontic treatment, and a determination of the method or methods to be followed.
2. A review of the diagnosis and recommendations with the patient's parents (this specialty appears to be devoted primarily to treatment of children) and obtaining consent to proceed.
3. Preliminary sizing of bands, a procedure which is primarily a trial and error method, using preformed bands, to get an approximate fit for each band over each tooth.
4. Final sizing of bands and cementing the bands to the teeth. This operation is done over a span of several visits and normally takes a total of two to three months to complete.
5. Removal of excess cement at the time the bands are fitted by the orthodontist.

6. Fitting an archwire into the brackets on the bands.
7. Tying the archwire to the bands by the use of ligature wires, a procedure which involves twisting the ligature wires in a cloverleaf fashion around the bracket and over the archwire, tightening the ligature wire by forming a "pigtail," cutting off the excess wire and then tucking in the "pigtail" to avoid irritation or injury to the inside of the mouth.
8. Periodic examinations by the orthodontist to check on the progress of the treatment which in most cases requires further adjustments of the archwire.
9. To adjust or change the fit of the archwire, the ligature wires must be cut and removed.
10. Refit the archwire by changing it or reshaping it.
11. Step 7 must be repeated, as well as all subsequent steps, as often as necessary to complete the course of treatment.

It is the contention of the plaintiffs that steps numbered 3, 5, 7 and 9, above, are purely mechanical in nature and do not require the professional skill and judgment of a licensed dentist, provided that the work is performed at the direction of and under the supervision of a licensed dentist as part of a dental treatment. Defendants contend that the applicable statutes require that these acts be performed by a licensed dentist and that dental auxiliaries (unlicensed) doing this work violate the statutes which define the practice of dentistry.

Plaintiffs' attack takes two approaches: first, they argue that *N. J. S. A.* 45:6–14 applies to this work, and therefore there is no violation of the statutes. Second, they argue that the act of the Legislature in requiring that these particular functions be performed by a licensed dentist is arbitrary, capricious and unreasonable, denies plaintiffs due process of law, and consequently is unconstitutional.

Plaintiffs concede that it is settled law that a state may reasonably regulate the practice of dentistry. *State v. Chapman,* 70 *N. J. L.* 339 (Sup. Ct. 1904) ; *Levine v. State Bd. of Registration and Exam. in Dentistry,* 121 *N. J. L.* 193 (Sup. Ct. 1938). In creating the Board of Dentistry and granting to it the power and duty to license dentists and regulate the profession, the Legislature also set forth de-

tailed requirements which govern the conduct of both the licensees and the board. The relevant pronouncements of the Legislature are found in the statutes. *N. J. S. A.* 45:6–7 reads in pertinent part:

Any license to practice dentistry may be revoked or suspended by the Board upon proof to its satisfaction that the licensee:

\* \* \* \* \* \* \* \*

(d) has been guilty of wilful and gross malpractice or wilful and gross neglect in the practice of dentistry; or

(e) has been guilty of employing unlicensed persons to perform work which, under this Chapter, can only legally be done by persons licensed to practice dentistry in this State; or has aided or assisted any person not regularly licensed to practice dentistry in this State to practice dentistry therein; \* \* \*.

The definition of "Practicing Dentistry" has also been fully set forth by the Legislature to insure that everyone is adequately advised of the conduct that is solely within the province of the licensed dentist. In relevant part it provides:

Any person shall be regarded as practicing dentistry within the meaning of this chapter who:

\* \* \* \* \* \* \* \*

(3) Performs dental operations of any kind gratuitously, or for a fee, gift, compensation or reward, paid or to be paid, either to himself or to another person or agency; or

\* \* \* \* \* \* \* \*

(5) Extracts a human tooth or teeth, or corrects or attempts to correct malpositions of the human teeth or jaws; or

\* \* \* \* \* \* \* \*

(9) Performs any clinical operation included in the curricula of recognized dental schools or colleges. [*N. J. S. A.* 45:6–19]

It is to subsections (d) and (e) of *N. J. S. A.* 45:6–7 that plaintiffs' constitutional attack is directed. Also, as mentioned above, plaintiffs claim that the following statute is applicable:

This chapter shall not be construed to prohibit an unlicensed person from performing mechanical work upon inert matter in a dental office. * * * [*N. J. S. A.* 45:6–14]

■ This contention can be disposed of quickly. Assuming *arguendo* that the four procedures in question constitute the performance of "mechanical work," the testimony of all three dentists at the trial clearly demonstrated that this work was not being performed on "inert matter." Not one of the experts advanced the opinion that teeth can be considered "inert." As at least one of the requisite statutory elements has not been proven, the exception contained in *N. J. S. A.* 45:6–14 does not apply, and reliance on that statute is misplaced.

■■ As for the constitutional issue, the burden of proof is on plaintiff, and it is a heavy one. There is a presumption of the constitutional sufficiency of a legislative enactment, and the onus of a showing *contra* is on him who interposes the challenge. *Jamouneau v. Harner,* 16 *N. J.* 500, 515 (1954). One who attacks a legislative enactment must negate every conceivable basis which may reasonably support the legislative action. *Fair Housing Coun. v. N. J. Real Estate Comm'n,* 141 *N. J. Super.* 334, 338 (App. Div. 1976). Also see, *N. J. Guild of Hearing Aid Dispensers v. Long,* 75 *N. J.* 544, 569 (1978).

In *Taber v. State Board, &c., Dentistry,* 137 *N. J. L.* 161 (E. & A. 1948), the constitutionality of *N. J. S. A.* 45:6–7(h) was challenged. In holding that section to be constitutional the court said:

The restrictions so imposed upon personal liberty of actions are within the police power of the State to provide for the general welfare of its people and to that end to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. [at 163]

Also see, *Abelson's, Inc. v. N. J. State Bd. of Optometrists,* 5 *N. J.* 412 (1950) ; *N. J. Optometric Ass'n v. Hillman-Kohan,* 144 *N. J. Super.* 411 (Ch. Div. 1976).

I consider the quotation from *Abelson's,* set forth in *Consolidation Coal Co. v. Kandle,* 105 *N. J. Super.* 104, 120 (App. Div. 1969), to be particularly appropriate to the consideration of this case:

\* \* \* If the measures invoked tend to serve a legitimate interest of society, the wisdom of the course taken is not ordinarily a justiciable question. When the subject lies within the police power of the State, "debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own. judgment." \* \* \* The range of the State's discretion in promoting the security and well being of the public "accords with the subject of its exercise." \* \* \* Where the end is one to which legislative power may properly be directed, it is enough "if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end. \* \* \*" [5 *N. J.* at 420; citations omitted]

I turn now to an application of these principles of law to the evidence presented in this case. I heard testimony from three dentists, each of whom qualified as a specialist in orthodontics. Dr. Ben J. Addiego, one of the plaintiffs, testi-fied on his own behalf and also called Dr. Robert B. Hedges, who is licensed in Pennsylvania and New Jersey and who, practices in Jenkintown, Pa. Plaintiffs were unable to call one Dr. Max Fogel, of Philadelphia, Pa., as another expert witness because of his unavailability, but it was agreed between the parties that if called he would testify to the same conclusion that Dr. Hedges reached, namely, that it was unreasonable to prohibit delegation of these functions to dental auxiliaries. Defendants called Mr. Herman Hammerschmidt, secretary of the defendant Board, for the limited purpose of introducing into evidence a copy of the notice mailed to all licensed dentists in the State of New Jersey calling their attention to the various prohibitions to the use of dental auxiliaries set forth in the Dental Practice Act. The other

witness called by defendants was Dr. Walter H. Mosmann, who is a practicing orthodontist licensed in New Jersey.

The thrust of plaintiffs' evidence was directed to the theory that these four procedures (preliminary sizing of bands, removal of cement, ligating archwires and removal of ligature wires) were purely mechanical and therefore did not require the services of a licensed dentist. Both Dr. Addiego and Dr. Hedges testified to this effect, each of them stating that the technique in performing these functions was easily learned and once learned there was no difference in the quality of the technique as practiced by either the orthodontist or the dental auxiliary. They also testified to the advantage of having these operations performed by the unlicensed auxiliary because it freed the orthodontist from the routine work and allowed more time for work that required his expertise and judgment. Each further testified that if the prohibition continued, either they would be unable to see as many patients, with the result that their income would be reduced, or they would have to charge the public more for their services.

In contrast to that testimony, Dr. Mosmann testified that all of the four functions in question had the potential for injuring the patient. He explained that in removing cement after the bands had been fixed, the operator must be careful because cement gets under the gum line creating the possibility of the gums being cut. Furthermore, he said that in his opinion the wiring of the archwire to the bands and how that wire was tightened was a critical stage in the treatment process and required the expertise of a dentist. He pointed out that if the dentist himself did not do this wiring, there was no way to check the results except by waiting to see what had occurred when the patient returned on his next visit. Finally, he opined that the removal of the ligature wires also required skill and judgment that should be exercised by the dentist since this operation also could result in injury to the patient. Dr. Mosmann conceded that the occurrence of serious injury to a patient from any of these functions was rare, but

reiterated that some injury did occur on occasion. This point had previously been admitted by plaintiff when he testified that there was no potential for serious harm in the performance of these duties, but that some minor injury to the mouth could occur.

From the testimony presented I find that plaintiffs have not borne the burden of proving that these functions are of such a mechanical nature and so lacking in the exercise of skill and expertise that the presumption of validity of this legislation has been overridden. Rather, I find that these functions do have the potential for harm to the public, albeit not of a serious nature; that the performance of these functions requires a certain skill and expertise, and that it is not unreasonable for the Legislature to require these functions to be performed by a licensed individual over whose activities the State can maintain control.

The Legislature has a broad discretion in assessing the need and the means requisite for the protection of the commonweal, and fairly debatable questions of policy and procedure are resolved in favor of the power. *Jamouneau v. Harner, supra* 16 *N. J.* at 515. It is the purpose of the Dental Practice Act to protect the health and welfare of the public, and the State's exercise of the police power for the protection of a valid public interest is not subject to judicial interference if the means employed are fairly adapted to that end. *Abelson's, supra* 5 *N. J.* at 420.

I find that plaintiffs have not borne the burden of proof, and since "it is the settled rule of judicial policy in this State that a legislative act will not be declared void unless the repugnancy to the Constitution is clear beyond reasonable doubt," *Gangemi v. Berry,* 25 *N. J.* 1, 10 (1957), I enter judgment in favor of defendants declaring *N. J. S. A.* 45:6–7 (d) and (e) constitutional and dismissing the complaint.