771 A.2d 659

DENTISTS FOR QUALITY CARE, INC. AND JOSE A. CUMBA, D.M.D., APPELLANTS, v. NEW JERSEY STATE BOARD OF DENTISTRY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 2000—Decided April 10, 2001.

Before Judges A.A. RODRÍGUEZ, COLLESTER and FALL.

*Gerald W. Conway* and *Pauline Foley* argued the cause for appellants, (*Thelen, Reid & Priest*, attorneys; *Mr. Conway* and *Amy P.K. Motzenbecker*, of counsel, and *Ms. Foley*, on the brief).

*Nancy Costello Miller*, Deputy Attorney General, argued the cause for respondent, (*John J. Farmer, Jr.*, Attorney General,

attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel, and *Ms. Miller,* on the brief).

The opinion of the court was delivered by

FALL, J.A.D.

Appellants, Dentists for Quality Care, Inc. and Jose A. Cumba, D.M.D., challenge the validity of *N.J.A.C.* 13:30–8.22, entitled "Validity of Diagnostic Tests for Traumatically Induced Temporomandibular Dysfunction (TMD)," promulgated and adopted by respondent, New Jersey State Board of Dentistry (Board) on December 2, 1998, effective March 1, 1999, pursuant to its authority contained in *N.J.S.A.* 45:6–19.4 and *N.J.S.A.* 39:6A–4.7 to adopt rules and regulations. 31 *N.J.R.* 651(a) (Mar. 1, 1999).

We conclude that the Board's action in adopting *N.J.A.C.* 13:30–8.22 did not violate the express legislative authority vested in the Board by *N.J.S.A.* 39:6A–4.7 and the implied legislative authority reposed in it by the Dental Practice Act, *N.J.S.A.* 45:6–1 to –69. Moreover, we find substantial evidence in the record to support the findings and conclusions of the Board in adopting *N.J.A.C.* 13:30–8.22, and that its adoption was neither arbitrary, capricious nor unreasonable.

On October 19, 1998, the Board published the proposed regulation and solicited written comments. 30 *N.J.R.* 3748(b) (Oct. 19, 1998); *see also N.J.S.A.* 52:14B–4(a)(prescribing the required procedures for adopting administrative rules and regulations).

In explaining the proposed new rule, the Board stated, in pertinent part:

> The proposed new rule sets forth professional standards governing diagnostic testing for temporomandibular dysfunction ("TMD") requested or performed by authorized licensees of the Board of Dentistry ("Board"). The objective is to assure that appropriate standards of professional care are maintained and that unnecessary and costly testing is avoided. The new rule provides guidance as to diagnostic tests that licensees shall or shall not be permitted to request or perform for persons who present symptoms of TMD subsequent to a traumatic injury to the mandibular. The genesis of this rule was the Legislature's mandate to limit payment for certain tests for persons holding specific types of automobile insurance

coverage under which treatment costs are paid by insurance carriers under Personal Injury Protection (PIP) pursuant to the Automobile Insurance Cost Reduction Act [AICRA], P.L.1998, c. 21, § 12, and c. 22.... Consistent with the Board's belief that diagnosis and implementation of treatment of TMD are not dictated by the nature of the traumatic causing the symptoms and dysfunction, the Board has determined to include in the rule's scope all traumatically induced TMD regardless of the etiology and/or source of payment.

The [AICRA] directs the Board to promulgate a list of valid diagnostic tests to be used in conjunction with the appropriate health care protocols in the treatment of persons sustaining bodily injury and subject to subsection (a) of section 8 of P.L.1972, c. 70 (N.J.S.A.39:6A-8). As required by that law, "Inclusion of a test on the list of valid diagnostic tests shall be based on demonstrated medical value, and a level of general acceptance by the relevant provider community and shall not be dependent for results entirely upon subjective patient response." [*N.J.S.A.* 39:6A-4.7.] The Board, in developing this list, received input from practitioners around the country advocating the inclusion of several tests the Board is proposing to exclude. The Board also reviewed and considered information relating to protocols for diagnosis of TMD that did not include the excluded tests.

After a thorough review of the comments received, the Board has determined to include certain tests, some with restrictions as to the time frame in, and frequency with, which they may be performed. Other tests, including mandibular tracking, surface EMG, sonograms, Doppler ultrasound, needle EMG, electroenceph-alogram (EEG), thermographs/thermograms, video fluoroscopy, and reflexology, have been excluded. The Board developed these lists based on the ability of the tests to yield data of sufficient value in the development, evaluation, and implementation of a plan of treatment for injuries. Where tests have been excluded, it is because the Board has determined that those tests do not offer information not otherwise available from a comprehensive clinical examination and/or permitted tests, which would alter the treatment plan. The Board recognizes that the excluded tests can be performed without risk to patients, but nonetheless concludes that sufficient information will be gleaned from the permitted tests and a clinical examination to formulate a proper diagnosis and plan of care. The rule adequately protects the public interest by assuring that the needs of the patient are met and by implementing the legislative policies articulated in [AICRA].

This Board rule is applicable only to treatment of traumatic injury to the lower jaw/mandible. Diagnosis of TMD unrelated to traumatic injury is not addressed at this time.... For traumatic injuries unrelated to automobile accidents, this rule is applicable.

A summary of pertinent provisions follows:

Subsection (a) provides definitions pertinent to the new rule.

Subsection (b) sets forth the diagnostic tests for which a licensee may bill a patient or third party payor to determine the presence of TMD and to formulate a treatment plan. The tests may be performed when medically necessary and consistent with clinically supported findings....

Subsection (c) lists the tests that the Board is proposing to exclude from the group for which licensees may bill a patient or third party. The Board's determi-

nation to exclude is based on its considered opinion that the excluded tests fail to yield data of sufficient, additional value, given the approved diagnostic tests, which would alter or influence the development, evaluation, or implementation of a plan of treatment. The rule excludes mandibular tracking, surface EMG, sonograms, Doppler ultrasound, needle EMG, electroencephalogram (EEG), Thermographs, video fluoroscopy, and reflexology.

Subsection (d) permits licensees to perform the excluded tests for no charge to the patient or third party payor after obtaining informed, written consent.

[30 *N.J.R.* 3748(b).]

In response to this notice and publication, the Board received numerous written comments opposing the adoption of *N.J.A.C.* 13:30–8.22. Although a public hearing on the proposed rule was not conducted prior to adopting *N.J.A.C.* 13:30–8.22, the Commissioner published each written comment received and the Board's responses thereto. 31 *N.J.R.* 651(a) (Mar. 1, 1999).[1] After consideration and analysis of the comments and information received, the Commissioner adopted the regulation, effective March 1, 1999.[2] *Id.*

On appeal, appellants present the following arguments for our consideration:

*POINT I*

THE BOARD'S REGULATION EXCEEDS THE SCOPE OF ITS STATUTORY AUTHORITY UNDER *N.J.S.A.* 39:6A–1.1 *ET SEQ.*, AND IS, THEREFORE, INVALID AS A MATTER OF LAW.

*POINT II*

---

[1] An agency considering an administrative regulation is not required to conduct a public hearing concerning the regulation unless requested to do so by a committee of the Legislature or a governmental agency or subdivision, provided that the agency affords all interested persons reasonable opportunity to submit data, views, or arguments, which the agency must consider prior to adoption. *N.J.S.A.* 52:14B–4(a)(3); *see also N.J.S.A.* 39:6A–4.7(c)(d).

[2] *N.J.A.C.* 13:30–8.22, as adopted on March 1, 1999, expired on March 10, 2000, pursuant to *Executive Order* No. 66 (1978). However, on January 18, 2000, the Board published its proposal to readopt, *inter alia, N.J.A.C.* 13:30–8.22, substantially in the form previously adopted. 32 *N.J.R.* 215(a) (Jan. 18, 2000). After receiving and considering additional written comments, the Board readopted *N.J.A.C.* 13:30–8.22, effective March 10, 2000, with an expiration date of March 10, 2005. 32 *N.J.R.* 1221(a) (Apr. 3, 2000).

AS THE BOARD'S RULEMAKING IS NOT SUPPORTED BY SUBSTANTIAL AND CREDIBLE SCIENTIFIC EVIDENCE IN THE RECORD, THE REGULATION MUST BE SET ASIDE.

We consider these arguments in the order presented in appellants' brief.

## I

Appellants contend that in promulgating and adopting *N.J.A.C.* 13:30–8.22 the Board exceeded the scope of the statutory authority contained in *N.J.S.A.* 39:6A–4.7 by failing to limit the scope of its regulation to traumatically induced TMD resulting from an automobile accident. Stated another way, appellants argue *N.J.A.C.* 13:30–8.22 is overly broad.

Appellate review of challenges to the rulemaking function of administrative agencies is limited. "Administrative regulations are accorded a presumption of validity." *New Jersey League of Municipalities v. DCA,* 158 *N.J.* 211, 222, 729 *A.*2d 21 (1999). Moreover, "[t]he party challenging their validity bears the burden of proving that the regulations are arbitrary, capricious or unreasonable." *Ibid.; see also In re Amendment of N.J.A.C. 8:31B–3.31,* 119 *N.J.* 531, 543–44, 575 *A.*2d 481 (1990); *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978). "That judicial deference to administrative agencies stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite.' " *New Jersey League of Municipalities, supra,* 158 *N.J.* at 222, 729 *A.*2d 21 (quoting *Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs.,* 96 *N.J.* 456, 474, 476 *A.*2d 784 (1984)). Accordingly, we cannot substitute our judgment for that of the agency. *Ibid.* (citing *Dougherty v. Dep't of Human Servs.,* 91 *N.J.* 1, 6, 449 *A.*2d 1235 (1982)).

However, a regulation "must be within the fair contemplation of the delegation of the enabling statute." *New Jersey*

*League of Municipalities, supra,* 158 *N.J.* at 222, 729 *A.*2d 21 (citation omitted); *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 561–62, 384 *A.*2d 795 (quoting *Southern Jersey Airways, Inc. v. National Bank of Secaucus,* 108 *N.J.Super.* 369, 383, 261 *A.*2d 399 (App.Div.1970)). Additionally, "the absence of express statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." *A.A. Mastrangelo, Inc. v. Comm'r, Dep't of Envtl. Protection,* 90 *N.J.* 666, 683–84, 449 *A.*2d 516 (1982). "[T]he reviewing court may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 562, 384 *A.*2d 795.

█ In applying these principles, our review of *N.J.A.C.* 13:30–8.22 "is limited to three inquiries: (1) whether the [Board's] action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings on which the [Board] based its actions; and (3) whether, in applying the legislative policies to the facts, the [Board] clearly erred by reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." *New Jersey Coalition of Health Care v. DOBI, supra,* 323 *N.J.Super.* 207, 231, 732 *A.*2d 1063 (App.Div.), *certif. denied,* 162 *N.J.* 485, 744 *A.*2d 1208 (1999).

The Automobile Insurance Cost Reduction Act (AICRA), *L.* 1998, *c.* 21, effective May 19, 1998, "made ... comprehensive changes in the no-fault automobile insurance laws of this State." *N.J. Coalition of Health Care, supra,* 323 *N.J.Super.* at 218, 732 *A.*2d 1063. In enacting AICRA, the Legislature concluded, *inter alia,* that

the substantial increase in the cost of medical expense benefits indicates that the benefits are being overutilized for the purpose of gaining standing to sue for pain and suffering, thus undermining the limitations imposed by the threshold and

necessitating the imposition of further controls on the use of those benefits, including the establishment of a basis for determining whether treatments or diagnostic tests are medically necessary[.]

*[N.J.S.A. 39:6A–1.1.]*

The regulation of reimbursable "medical expenses" to those that are "medically necessary" was a key feature of the reforms contained in AICRA. *See N.J.S.A.* 39:6A–1.1 (delineating the purposes of AICRA); *New Jersey Coalition of Health Care, supra,* 323 *N.J.Super.* at 220, 732 *A.2d* 1063. The Commissioner of the Department of Banking and Insurance was required to "promulgate medical fee schedules on a regional basis for the reimbursement of health care providers[,]" *N.J.S.A.* 39:6A–4.6(a), for "reasonable and necessary medical expenses" that were determined to be "medically necessary," *N.J.S.A.* 39:6A–2(e), "in accordance with standards of good practice and standard professional treatment protocols[.]" *N.J.S.A.* 39:6A–2(m).

As part of this comprehensive reform, AICRA required, in pertinent part, that:

The professional licensing boards governing health care providers in the Division of Consumer Affairs shall promulgate, pursuant to the "Administrative Procedures Act," [*N.J.S.A.* 52:14B–1 to –15], a list of valid diagnostic tests to be used in conjunction with the appropriate health care protocols in the treatment of persons sustaining bodily injury and subject to ... [*N.J.S.A.* 39:6A–8(a) ]. Inclusion of a test on the list of valid diagnostic tests shall be based on demonstrated medical value, and a level of general acceptance by the relevant provider community and shall not be dependent for results entirely upon subjective patient response. The initial lists shall be promulgated within 180 days of the effective date of this section and shall be revised from time to time as determined by the respective boards to reflect new testing procedures and emerging technologies enjoying a level of general acceptance within the appropriate provider community. In updating its list, a board may take action at a regularly scheduled meeting, notwithstanding the provisions of [the Administrative Procedures Act] to the contrary, after notice as provided herein....

*[N.J.S.A. 39:6A–4.7.]*

As required by *N.J.S.A.* 39:6A–4.7,

each of the professional licensing boards governing health care also promulgated complementary regulations, in accordance with the Administrative Procedures Act, *N.J.S.A.* 52:14B–1 to –15, which list valid diagnostic tests for treating individuals involved in accidents, to be used in conjunction with the health-care protocols promulgated by the Department [of Banking and Insurance].

[*New Jersey Coalition of Health Care, supra,* 323 *N.J.Super.* at 226–27, 732 *A.2d* 1063.]

Accordingly, it is clear that the Board was authorized to promulgate and adopt administrative regulations containing "a list of valid diagnostic tests to be used in conjunction with the appropriate health care protocols" adopted by the Commissioner of the Department of Banking and Insurance pursuant to *N.J.S.A.* 39:6A–4.6(a) in the treatment of persons sustaining bodily injury in automobile accidents and subject to the tort threshold limitations contained in *N.J.S.A.* 39:6A–8(a). *N.J.S.A.* 39:6A–4.7.

However, in addition to prescribing professional standards for dentists governing diagnostic testing for TMD due to a traumatic injury to the mandibular as a result of an automobile accident to which *N.J.S.A.* 39:6A–8(a) is applicable, *N.J.A.C.* 13:30–8.22 prescribes diagnostic testing standards for TMD subsequent to any traumatic injury.

The Dental Practice Act authorizes the creation of the New Jersey State Board of Dentistry. *N.J.S.A.* 45:6–1; *N.J.S.A.* 45:1–2.2. The Board is authorized to "adopt rules for its own government and for the examination of candidates for licenses to practice dentistry[,]" *N.J.S.A.* 45:6–3, "adopt rules and regulations and establish standards for the establishment, operation, conduct and maintenance of industrial or corporate dental clinics[,]" *N.J.S.A.* 45:6–15.3; establish standards and procedures for continuing dental education requirements, *N.J.S.A.* 45:6–10.2, –10.3; by rule determine the qualifications of applicants for teaching the science of dentistry, *N.J.S.A.* 45:6–16.2; adopt rules and regulations and provide standards for the identification of dentures, *N.J.S.A.* 45:6–19.4; adopt rules and regulations pertaining to dental hygienists, *N.J.S.A.* 45:6–50(e) (h); adopt rules or regulations concerning dental assistants and limited registered dental assistants, *N.J.S.A.* 45:6–50.1 to 50.2 and 45:6–55; and by rule or regulation specify procedures that may be performed by registered dental assistants, *N.J.S.A.* 45:6–55(b). Additionally, pursuant to *N.J.S.A.* 45:1–15.1, the Board and other professional licensing boards are "authorized to adopt rules and regulations to serve the public health, safety and welfare[,]" although this provision, enacted by *L.* 1999, *c.* 403,

§ 8, became effective on January 18, 2000, subsequent to the original promulgation and adoption of *N.J.A.C.* 13:30–8.22.

Although there may have been some question concerning the Board's authority, beyond that provided in *N.J.S.A.* 39:6A–4.7, to regulate diagnostic tests for traumatically-induced TMD, we conclude the readoption of *N.J.A.C.* 13:30–8.22, in light of the enactment of *N.J.S.A.* 45:1–15.1, resolves that issue. In looking to the statutory policy sought to be achieved by enactment of the Dental Practice Act, we are satisfied the Board has not exceeded the scope of its statutory authority in adopting *N.J.A.C.* 13:30–8.22.

■ It has long been the settled law of this State that the practice of dentistry may be reasonably regulated to protect the public health, safety and welfare. *Taber v. State Board of Registration and Exam. in Dentistry,* 137 *N.J.L.* 161, 163, 59 *A.2d* 231 (E. & A.1948); *State v. Chapman,* 69 *N.J.L.* 464, 467–69, 55 *A.* 94 (Sup.Ct.1903), *aff'd,* 70 *N.J.L.* 339, 57 *A.* 1133 (E. & A.1904); *Levine v. State Bd. of Registration and Exam. in Dentistry,* 121 *N.J.L.* 193, 197, 1 *A.2d* 876 (Sup.Ct.1938); *Addiego v. State,* 163 *N.J.Super.* 97, 103–04, 394 *A.2d* 179 (Law Div.1978), *aff'd,* 170 *N.J.Super.* 585, 407 *A.2d* 848 (App.Div.1979). Here, the Board has determined that the subject of diagnostic testing in traumatically-induced TMD of the mandibular is a matter in need of regulation to protect the public health, safety and welfare from the cost and ordeal of unnecessary testing. "[T]he grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 562, 384 *A.2d* 795; *see also New Jersey League of Municipalities, supra,* 158 *N.J.* at 223, 729 *A.2d* 21; *A.A. Mastrangelo, Inc., supra,* 90 *N.J.* at 683–84, 449 *A.2d* 516.

## II

■ Appellants also argue that the adoption of *N.J.A.C.* 13:30–8.22 is not supported by substantial and credible scientific evi-

dence in the record. We have carefully reviewed the record in the light of the written and oral arguments advanced by the parties concerning this issue and conclude this argument is clearly without merit and does not warrant extensive discussion in this opinion. *R.* 2:11–3(e)(1)(D). The record contains significant evidence supporting the position of each party. A committee of the Board analyzed that evidence and reported its findings to the Board. Moreover, prior to promulgating *N.J.A.C.* 13:30–8.22, the Board considered the competing evidence and factors during its meetings. Where, as here, the regulation is statutorily authorized, we are not free to substitute our judgment for the exercise of expertise by an agency in sorting through that evidence and enacting a regulation. *New Jersey League of Municipalities, supra,* 158 *N.J.* at 222, 729 *A.*2d 21; *Bergen Pines County Hosp., supra,* 96 *N.J.* at 474, 476 *A.*2d 784; *Dougherty, supra,* 91 *N.J.* at 6, 449 *A.*2d 1235.

Accordingly, the adoption of *N.J.A.C.* 13:30–8.22 by the New Jersey State Board of Dentistry is affirmed.