**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4268-18

IN THE MATTER OF
N.J.A.C. 13:30-8.4A
GOVERNING INJECTABLE
PHARMACOLOGICS.

_____

Argued July 27, 2021 – Decided August 16, 2021

Before Judges Rothstadt and Enright.

On appeal from the New Jersey State Board of Dentistry, Division of Consumer Affairs, Department of Law and Public Safety.

Arthur Meisel argued the cause for appellant New Jersey Dental Association (New Jersey Dental Association, attorneys; Arthur Meisel, on the briefs).

Nancy Costello Miller, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Dentistry (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Nancy Costello Miller, on the brief).

PER CURIAM

According to appellant, the New Jersey Dental Association (NJDA), it is appealing from "the construction of a regulation by the New Jersey State Board of Dentistry [(Board)]" that arbitrarily allows oral and maxillofacial surgeons who practice under a dentist-only license, but who have specialized training, to inject pharmacologics such as Botulinum Toxin Type A (Botox)[1] into patients' foreheads and orbital-eye areas for cosmetic procedures, while prohibiting general dentists who practice under the same type of license from administering those injections in the same areas. There is no dispute that the appeal is not from a final agency decision by the Board. Rather, the NJDA states the Board's limitation on dentists is arbitrary, capricious, and unreasonable because the surgeons and dentists operate under the same kind of dentist-only license, and state regulations do not provide for an expanded scope of practice by oral and maxillofacial surgeons. After considering the parties' contentions on appeal, we conclude that this appeal must be dismissed as it does not meet our requirement for finality or exhaustion of administrative remedies under Rule 2:2-3(a)(2).

---

[1] A state regulation defines "injectable pharmacologics" as "any medication classified as a neurotoxin, adjuvant or therapeutic agent including, but not limited to, hyaluronic acid (such as Restylane), fillers (such as collagen), [Botox] or similar products that have been approved by the Federal Food and Drug Administration." N.J.A.C. 13:30-8.4A(a).

We begin our review by observing that under the Dental Practices Act, N.J.S.A. 45:6-1 to -73, the Legislature has vested the Board, like other licensing boards, with the authority to adopt regulations for the administration of the practice of dentistry in New Jersey in order to protect the "public health, safety and welfare." N.J.S.A. 45:1-15.1; see also N.J.S.A. 45:6-1 (establishing the Board); Dentists for Quality Care, Inc. v. N.J. State Bd. of Dentistry, 339 N.J. Super. 257, 266-67 (App. Div. 2001) (discussing the Board's responsibilities). The regulations promulgated by the Board appear in the State's corresponding administrative code, N.J.A.C. 13:30-1.1 to -8.26, which apply to "all licensed dentists" and related practitioners. N.J.A.C. 13:30-1.1(b).

In relevant part, under the plain language of N.J.S.A. 45:6-19(1), a person engages in dentistry by "[u]s[ing] a dental degree . . . to diagnose, treat, prescribe or operate for any disease, pain, deformity, deficiency, injury, or physical condition of the human tooth, teeth, alveolar process, gums, cheek, or jaws, or oral cavity and associated tissues." It is therefore within the Board's authority to regulate a dentist's use of injectable pharmacologics within those portions of the human anatomy.

Additionally, N.J.S.A. 45:6-19 includes within the definition of the scope of the practice of dentistry, among other things, "any clinical operation included

in the curricula of recognized dental schools or colleges." N.J.S.A. 45:6-19 (9). Procedures such as the administration of injectable pharmacologics for the surgical and cosmetic treatment of areas outside of the maxillofacial area, including the forehead and peri-orbital area, are included within the curricula of residency programs approved by the Commission on Dental Accreditation (CODA) for the training of oral and maxillofacial surgeons, but not for dentists. Accordingly, oral and maxillofacial surgeons do not operate outside of their statutorily defined scope of practice when administering such injections in the maxillofacial area outside of the peri-oral area.

As to the regulation governing the administration of injectable pharmacologics, N.J.A.C. 13:30-8.4A largely mirrors the language found in the authorizing statute. The regulation limits a dentist's administration of such injections for the "cosmetic or functional enhancement of peri-oral tissue" to a dental treatment setting and defines the "peri-oral area" as the "gums, cheeks, jaws, lips and oral cavity and associated tissues." N.J.A.C. 13:30-8.4A(a), (c). The regulation reiterates the limitation by stating, "Nothing in this section shall be construed to authorize a dentist to treat diseases, disorders or conditions that are outside the scope of the practice of dentistry, as defined in N.J.S.A. 45:6-19." N.J.A.C. 13:30-8.4A(m).

4

As the State agency charged with the responsibility for promulgating and enforcing regulations for the practice of dentistry, the Board's final agency determinations, when issued, are entitled to our deference. While we are not bound by a state agency's interpretation of a statute, U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012), when the agency is charged with enforcing the statute through the adoption of rules and regulations and its construction comports with the legislative design, the agency's interpretation is entitled to substantial deference, Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475-76 (2019). Our "deference to administrative agencies stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite.'" Dentists for Quality Care, Inc., 339 N.J. Super. at 263 (quoting N.J. State League of Muns. v. Dep't of Cmty. Affs., 158 N.J. 211, 222 (1999)).

Here, the NJDA did not afford the Board an opportunity to formally address its challenge to the Board's regulations. The NJDA did not pursue any action before the Board under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, for a declaratory ruling that dentists are authorized to

inject pharmacologics in the same fashion that oral and maxillofacial surgeons administer such injections. See N.J.S.A. 52:14B-8 (permitting a party to request from an agency a declaratory ruling after a "[f]ull opportunity for [a] hearing"). Nor did it seek that the regulation be amended or repealed. See N.J.S.A. 52:14B-4(f) (authorizing a party to submit a request that a challenged rule be amended or repealed). See also Dentists for Quality Care, Inc., 339 N.J. Super. at 263 (addressing an appellant's challenge to the Board's promulgation and adoption of a regulation). Instead of making any formal application to the Board, the NJDA pursued an informal procedure in an attempt to change the enforcement of the Board's regulation. For those reasons, the Board never rendered a final agency decision in response to the NJDA's concerns.

The history of the NJDA's informal efforts and the Board's responses are summarized as follows. Since early 2006, the Board has responded to informal inquiries about dentists being able to inject pharmacologics by stating it was permissible as long as they were used

> to diagnose, treat, prescribe or operate for any disease, pain, deformity, deficiency, injury, or physical condition of the human tooth, teeth, alveolar process, gums, cheek or jaws, or oral cavity and associated tissues as defined in N.J.S.A. 45:6-19 and provided [the dentists] have adequate training and are aware of the consequences and possible complications of the use of this pharmacological agent.

In April 2006, the Board received a report from its previously established "Botox committee" that recommended the "impos[ition of] an educational requirement before using Botox or fillers and the issuance of a permit." The following month, the Board referred another inquiry to a committee to make recommendations about the "training of a Board certified oral and maxillofacial surgeon in an approved residency and cosmetic and esthetic fellowship and to reconcile such training with the privileges of oral and maxillofacial surgeons." Thereafter, at its regular meeting on July 12, 2006, the Board determined that such procedures were within the scope of the practice of dentistry but could only be performed by oral and maxillofacial surgeons with the "appropriate comprehensive training."

Since 2006, the Board has repeatedly fielded questions regarding the use of injectable pharmacologics such as Botox, and consistently determined that a dentist's use of injectable pharmacologics "outside of the peri-oral area may be appropriate" only for treatment of dentistry-related issues such as temporomandibular joint dysfunction.[2] The Board has also entertained

---

[2] According to a publication by Harvard Medical School, temporomandibular joint dysfunction is "a collection of painful symptoms affecting the jaw joints" found at the intersection of "the temporal bone of the skull, the jawbone, and the jaw muscles." Temporomandibular Joint Dysfunction, Harvard Health

A-4268-18

questions regarding its interpretation of its regulations and the limitations placed on dentists as compared to oral and maxillofacial surgeons. For example, in 2007, it responded to an inquiry from the American Association of Oral and Maxillofacial Surgeons regarding "dentists administering cosmetic facial fillers." The Board advised that although at that time the regulations provided no express restriction on the performance of such treatment, the Board was in the process of modifying its regulations to impose "limitations and educational requirements."

In April 2008, in response to counsel for the NJDA's inquiry as to what would constitute "appropriate comprehensive training" with respect to performance of cosmetic surgical procedures, the Board recommended that completion of a CODA accredited oral and maxillofacial surgery program would suffice. In December 2008, in response to a request from the New Jersey Society of Oral and Maxillofacial Surgeons, the Board agreed to exempt oral and maxillofacial surgeons from the contemplated educational requirements.

Two years later, on November 1, 2010, the Board published a proposed regulation in the New Jersey Register and, a year later, adopted the proposed

Publishing (December 15, 2014),
https://www.health.harvard.edu/temporomandibular-joint-dysfunction.

regulation without changes as N.J.A.C. 13:30-8.4A. The proposed regulation, like the adopted regulation, permitted dentists who have completed a "Board-approved post-doctoral course" in the use of injectable pharmacologics to administer injectable pharmacologics "for the cosmetic or functional enhancement of peri-oral tissue," so long as the administration of the injectable is provided "in a dental treatment setting." 42 N.J.R. 2576-77 (Nov. 1, 2010); N.J.A.C. 13:30-8.4A(b), (c), (d), (f). And, as already noted, the regulation clearly provided that it did not authorize dentists to treat patients for conditions "that are outside the scope of the practice of dentistry, as defined in N.J.S.A. 45:6-19." 42 N.J.R. 2577 (Nov. 1, 2010); N.J.A.C. 13:30-8.4A(m).

During a period of public commentary following the proposed regulation's publication in the New Jersey Register, the Board received a number of comments expressing concern that N.J.A.C. 13:30-8.4A would impermissibly expand the scope of the practice of dentistry. See 43 N.J.R. 3096-100 (Nov. 21, 2011). The Board addressed these comments by noting that the regulation specifically provides that it does not authorize dentists to operate outside of the scope of the practice of dentistry established in N.J.S.A. 45:6-19. Ibid. Nevertheless, the record does not reflect that the NJDA or any other party

A-4268-18

petitioned the Board to modify or repeal the regulation following the Board's adoption of N.J.A.C. 13:30-8.4A.[3]

Despite the clear language of the regulation, on December 7, 2011, the Board considered an informal inquiry from a dentist who asked, "Can dentists inject [Botox] in the peri-orbital area, treat crow's feet, and inject in the forehead?" According to the minutes from its meeting that day, the Board discussed N.J.A.C. 13:30-8.4A and the Board's intent in promulgating the regulation and responded to the inquiry in the negative, unless the dentist was "treating a dental condition as per" N.J.A.C. 13:30-8.4A(m). The Board explained that the regulation did not permit dentist licensees to "perform services outside the permitted scope of practice" and it was not the Board's intent to permit such services in promulgating the regulation.

At its regular meeting on April 4, 2012, and again on July 11, 2012, the Board responded to inquiries from the NJDA's counsel about the status of a clarification to the regulation regarding the administration of cosmetic Botox

---

[3] Records kept by the New Jersey Division of Consumer Affairs and promulgated online reflect that the Board has received no such petition since at least October 2016. See Rule Proposals and Adoptions, New Jersey Division of Consumer Affairs, https://www.njconsumeraffairs.gov/Proposals (last visited July 28, 2021).

A-4268-18

injections. On both occasions, counsel was informed that the matter was still under review. To date, no clarifying publication or modification to the regulation has been promulgated by the Board.

In 2019, the NJDA learned that one of its member dentists had been "offered an opportunity to settle a purported violation of the injectable pharmacologics regulation." According to NJDA, the member was informed that "'the use of injectable pharmacologics for areas outside the peri-oral area, such as cosmetic enhancement for forehead lines or crow's feet, is not within the scope of practice of dentistry' because it includes 'providing treatment outside the peri-oral region, as defined in N.J.A.C. 13:30-8.4A(c).'"

Thereafter, counsel for the NJDA sent a letter to the Board urging that the Board adopt a "voluntary, temporary moratorium on the enforcement of N.J.A.C. 13:30-8.4A . . . and defer further action regarding a pending alleged violation of that regulation against a member of the [NJDA] pending a further review by the . . . Board." In the letter, the NJDA argued that the Board had long recognized that "the practice of dentistry includes the maxillofacial area" and contended that "[i]f that were not the case, then [o]ral and [m]axillofacial [s]urgeons who possess dentist-only licenses could not practice in those facial regions regardless of their level of training because they would not be included

in the scope of the practice of dentistry." The NJDA further argued that determinations on the scope of the practice of dentistry were defined by the scope of practice intended by the Legislature—not by the amount or type of "training received by the licensee." Consequentially, the NJDA argued that if administration of cosmetic injections in the forehead or for crow's feet fell within the scope of the practice of dentistry for oral and maxillofacial surgeons—who practice on dentist licenses—then such injections fell within the scope of the practice of dentistry for other dentist-only licensees as well.

At its regular meeting on May 1, 2019, the Board addressed the letter from the NJDA and responded by passing a resolution "affirm[ing the Board's] long-standing position that recognizes that oral and maxillo-facial surgeons have an expanded scope of practice based on their extensive additional training." This appeal followed.

We conclude from the record here that the Board's action at the May 1, 2019 meeting did not result in an appealable final agency decision under Rule 2:2-3(a)(2). As our Supreme Court has explained:

> Judicial review of administrative agency action is a constitutional right. See N.J. Const. art. VI, § 5, ¶ 4. Rule 2:2-3(a)(2) also authorizes an appeal as of right to the Appellate Division from final decisions or actions of any state administrative agency or officer and to review the validity of any rule promulgated by a state

 A-4268-18

administrative agency with the exception of certain tax matters.

[Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016).]

A final agency decision is characterized by "the absence of or exhaustion of 'all avenues of internal administrative review'" and may be found where "the agency communicates with 'unmistakable written notice the finality' of its decision." Id. at 136-37 (first quoting Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 527 (App. Div. 2009); and then quoting In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 301 (1997)).

Final agency action is also characterized by findings of fact, conclusions of law, a definitive ruling, and a clear statement that the interested party may seek review of the decision and the manner in which that may be accomplished. Thus, a letter without those necessary elements and written in terms that cause[s] the Court to consider the letter no more than "a polite refusal" by the agency to change its previously stated position could not be considered final agency action for purposes of triggering a right to appeal.

[Id. at 139 (citation omitted).]

A final agency action is preferred and typically necessary for appellate review because a final agency decision "ha[s] a fully developed record," enabling "a reviewing court [to] engage in meaningful appellate review." ACLU of N.J. v. Hendricks, 233 N.J. 181, 200-01 (2018).

This court's general policy regarding a party's obligation to exhaust avenues for administrative review by a state agency is codified in Rule 2:2-3(a)(2), which provides:

> [A]ppeals may be taken to the Appellate Division as of right . . . (2) to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer . . . except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise.

Rule 2:2-3(a)(2)'s exhaustion requirement "ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area[,] . . . allows the parties to create a factual record necessary for meaningful appellate review," and provides an agency the opportunity to issue a decision which "may satisfy the parties and thus obviate [the need to] resort to the courts." Triano v. Div. of State Lottery, 306 N.J. Super. 114, 121 (App. Div. 1997) (quoting City of Atl. City v. Laezza, 80 N.J. 255, 265 (1979)). The first consideration is "particularly important where," as here, "agency interpretation of the relevant statutes or regulations is desirable." Ibid. (quoting Magliochetti v. State, 276 N.J. Super. 361, 374 (Law Div. 1994)).

This exhaustion requirement is "not an indispensable pre-condition," id. at 12 (quoting Swede v. City of Clifton, 22 N.J. 303, 315 (1956)), and will generally be relaxed under the following circumstances: "(1) when only a question of law exists; (2) when administrative remedies would be futile; (3) when irreparable harm would result; (4) when jurisdiction of the agency is doubtful; or (5) when an overriding public interest calls for a prompt judicial decision," id. at 121-22. "[I]n cases only involving legal questions, jurisdiction should remain with the agency where the agency is in a special position to interpret its enabling legislation, can conclusively resolve the issue or issues, and can provide relief for the plaintiff." Id. at 122 (citing Abbott v. Burke, 100 N.J. 269, 298 (1985)).

Applying these settled principles here, we conclude that the issues raised by the NJDA call for resolution through the development of a record and the Board issuing a final determination after exercising its expertise in the area. We view the Board's May 1, 2019 response to the NJDA's informal inquiry not as a final determination but more akin to a "polite refusal" to reconsider its regulation. Nor has the NJDA exhausted, or even pursued, any available administrative remedies. The NJDA's challenge, if pursued, must be formally presented to the Board for administrative review under the APA to provide a

15

final agency determination and a factual foundation based on relevant evidence submitted by the NJDA and others. That foundation, once developed, would provide the Board with an adequate basis for either its rejection of the NJDA's position or, perhaps, reconsideration of its long-standing limitation, which would obviate the need for our review.

The need for the development of a record before the Board is evident from the NJDA's arguments raised before us, which it summarized as follows:

> There is absolutely nothing in the rulemaking record or in any minutes of the Board which would support the conclusion that the techniques and/or complexities of administering injectable pharmacologic agents below the orbit of the eye differ in any respect from their administration "for cosmetic or functional enhancement of peri-oral tissue" . . . involving disorders or conditions like crow's feet or furrows in the forehead. Further, while oral and maxillofacial surgeons possess years' - more training than general dentists, that training pertains to complex facial surgical and cosmetic procedures, not to heightened training in administering injectable pharmacologics in the region above or below the lower orbit of the eye.

Essentially, the NJDA contends that because dentists and oral and maxillofacial surgeons operate under the same type of dentist license, and because there is only one scope of practice for dentistry in N.J.S.A. 45:6-19, if oral and maxillofacial surgeons are permitted to perform cosmetic procedures in the maxillofacial area under a dentist license, other licensed dentists should be

16

permitted to do so as well—even if they have not completed the residency program required to become an oral and maxillofacial surgeon. The validity of the NJDA's arguments requires a full record to be developed to address their assertion that there is no distinction between dentists and oral and maxillofacial surgeons in the context of their respective qualifications to administer injectable pharmacologics.

We are satisfied that without a developed factual basis to support the proposition that there is no rational basis to treat dentists differently from oral and maxillofacial surgeons, and absent a final agency decision explaining why such proof, if it exists, should be rejected, we are not able to conduct a meaningful review of the Board's adoption of the regulation. Nor are we in a position to review the Board's continuing adherence to the prohibition against dentists administering injectable pharmacologics in the same manner that oral and maxillofacial surgeons are permitted to provide that service. The absence of the type of record and final agency decision contemplated by formal action under the APA leaves us with no choice but to dismiss this appeal.

We are not persuaded otherwise by the NJDA's citation to In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 536 (2016), a case involving an appeal from a final agency decision denying accreditation to a nursing

program, or to <u>U.S. Bank, N.A.</u>, 210 N.J. 187, which addressed an appeal from a foreclosure judgment. Both of those cases arose from appeals of final decisions either by an agency or a court, and not as here from a response to an informal request.

Finally, we need not address the NJDA's argument that the Board interpreting their regulations to prohibit general dentists from administering cosmetic injections outside of the peri-oral area was impermissible de facto rulemaking for which the Board failed to provide notice, because that argument was raised for the first time in the NJDA's reply brief to us. <u>See</u> <u>Gormley v. Wood-El</u>, 218 N.J. 72, 95 n.8 (2014); <u>Drinker Biddle & Reath LLP v. N.J. Dep't. of Law & Pub. Safety</u>, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (claims not addressed in merits brief deemed abandoned and could not properly be raised in a reply brief); <u>see also</u> Pressler and Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2021) ("It is, of course, clear that an issue not briefed is deemed waived."). We note only that to the extent the NJDA takes issue with the Board's interpretation of its regulation, they may seek a declaratory ruling from the Board as to whether that interpretation will be enforced against dentists. N.J.S.A. 52:14B-8. And, even were we to consider this argument, our review

would be hampered by the lack of a developed record demonstrating the Board's

expertise in interpreting their regulations and the relevant statutory authority.

Appeal dismissed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4268-18